DIP Liens") in the Collateral (as defined in the Senior DIP Credit Agreement), including without limitation all currently owned or hereafter acquired property and assets of the Debtors of any kind or nature, whether real or personal, tangible, or intangible, wherever located, now owned, or hereafter acquired or arising and all Proceeds, products, rents, and profits thereof, including, without limitation, all cash (including all Cash Collateral, wherever held), goods, accounts receivable, inventory, cash-in-advance deposits, real estate (such lien on the Debtors' leasehold interests shall be limited to the Proceeds derived from the sale or disposition of any of the Debtors' leasehold interests and not on the leasehold interests themselves), machinery, equipment, vehicles, trademarks, trade names, licenses, causes of action, rights to payment including tax refund claims and insurance proceeds and the proceeds, products, rents, and profits of all of the foregoing, but specifically excluding avoidance actions under Chapter 5 of the Bankruptcy Code and proceeds thereof and commercial tort claims and proceeds thereof (all of the foregoing, the "Senior DIP Collateral"), senior and superior pursuant to section 364(d) of the Bankruptcy Code to the Prepetition Liens and any other prepetition liens and security interests (exclusive of those securing obligations under the Prepetition Senior Credit Agreement) except those that are (a) valid, perfected, and senior to the Prepetition Liens and security interests securing obligations under the Prepetition Senior Credit Agreement, (b) not avoidable, and (c) not incurred in violation of covenants in the Prepetition Senior Credit Agreement.

25.     _Automatic Perfection of Liens_. All Liens granted herein and in the other Senior DIP Financing Documents to secure repayment of the Senior DIP Indebtedness shall pursuant to this Final Order be, and they hereby are, deemed perfected effective as of the Petition Date, and no further notice, filing, or other act shall be required to effect such perfection; provided, however, that if the Senior DIP Agent shall, in its sole discretion, choose to record such

mortgages, financing statements, notices of liens, and security interests and other similar documents, all such mortgages, financing statements, or similar instruments shall be deemed to have been filed or recorded at the time and on the date of the Petition Date. Each and every federal, state, and local government agency or department is hereby authorized to the extent permitted by applicable law to accept the entry by this Court of the Interim Order and this Final Order as evidence of the perfection on the Petition Date of the Liens granted herein and in the other Senior DIP Financing Documents.

26.     Priority of Security Interests. Except as expressly set forth in this Final Order, the Liens granted in this Final Order shall not be (i) subject to any Lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other Lien under section 364(d) of the Bankruptcy Code or otherwise.

27.     Effect of Reversal on Liens. Except and only to the extent a Lien authorized or created pursuant to this Final Order or any of the other Senior DIP Financing Documents secures Prepetition Indebtedness or Senior DIP Financing used to pay Prepetition Indebtedness, the validity, enforceability, priority, or amount of any Lien or claim authorized or created pursuant to this Final Order or any of the other Senior DIP Financing Documents shall not be affected by any finding or order of this Court or any other court regarding any Prepetition Indebtedness or Prepetition Liens, including, without limitation, any order of this Court or any other court invalidating claims or Prepetition Liens on account of or securing the Prepetition Indebtedness.

28.     Injunction Against Future Encumbrance. Except as provided in the Senior DIP Financing Documents or this Final Order, the Debtors shall be enjoined and prohibited from at any time during their Chapter 11 cases granting claims or Liens in the Senior DIP Collateral or

any portion thereof to any other parties (a "<u>Succeeding Senior DIP Lender</u>") pursuant to sections 364(d), 503(b), or 507(b) of the Bankruptcy Code or otherwise, which claims or Liens are senior to, or on a parity with, the claims of the Senior DIP Agent, the Senior DIP Lenders, and the other Secured Parties granted herein or the Liens of the Senior DIP Agent, the Senior DIP Lenders, and the other Secured Parties in the Senior DIP Collateral or any portion thereof (the "<u>Succeeding DIP Financing Priming Liens</u>"); provided, however, that the Debtors may seek approval of the Court to grant Succeeding DIP Financing Priming Liens to a Succeeding Senior DIP Lender so long as the condition to the granting and existence of such liens is the satisfaction in full of all obligations then outstanding under the Senior DIP Financing Documents. Further, to the extent that the Debtors seek approval of the Court to grant Succeeding DIP Financing Priming Liens, other than in accordance with the provision set forth in the immediately preceding sentence, to a Succeeding Senior DIP Lender, such request shall constitute an Event of Default under the Senior DIP Financing Documents. Additionally, except as provided in the Senior DIP Financing Documents, it shall be an Event of Default under the Senior DIP Credit Agreement if at any time during the Debtors' Chapter 11 cases an order is entered providing adequate protection in any form to any party pursuant to sections 361, 362, 363, 364, 503(b), or 507(b) of the Bankruptcy Code or otherwise without the prior written consent of the Senior DIP Agent. The Debtors shall be enjoined and prohibited from at any time (i) using the Senior DIP Collateral except under the terms of this Final Order and the other Senior DIP Financing Documents and (ii) applying to any court for an order authorizing the use of the Senior DIP Collateral except on the terms of this Final Order and the other Senior DIP Financing Documents.

29.    Superpriority Status. In addition, the Senior DIP Indebtedness shall have priority in all of these Chapter 11 cases in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code ("Superpriority"), subject only to the Carve-Out as defined herein. Except for the Carve-Out, no costs or administrative expenses that have been or may be incurred in the Debtors' Chapter 11 cases or in any conversion of the Debtors' Chapter 11 cases pursuant to section 1112 of the Bankruptcy Code or in any other proceeding related thereto and no priority claims (whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment) including, without limitation, any other Superpriority claims (including any Superpriority claims in connection with any authorization to use cash collateral or the provision of adequate protection to a secured creditor) are or will be prior to or on a parity with the (i) claims of the Senior DIP Agent, the Senior DIP Lenders, or the other Secured Parties against the Debtors arising out of the Senior DIP Indebtedness or any provision of this Final Order or (ii) Liens granted herein and in the other Senior DIP Financing Documents in and to the Senior DIP Collateral. Notwithstanding the Superpriority afforded to the Senior DIP Indebtedness above and herein, the Senior DIP Indebtedness shall not be repaid from or have the ability to seek payment from avoidance actions under Chapter 5 of the Bankruptcy Code and proceeds thereof or commercial tort claims and proceeds thereof. In the event of an order of the Bankruptcy Court, or other court having jurisdiction, upholding a challenge to the Prepetition Indebtedness as provided in paragraph 39 hereof, and/or determining that the value of the Prepetition Collateral is less than the amount of the Prepetition Indebtedness, then the Superpriority afforded to the Senior DIP Indebtedness, to the extent, and only to the extent, the Senior DIP Financing was used to repay the Prepetition Indebtedness,

shall not be accorded superpriority status to the extent of any finding or order invalidating the Prepetition Liens securing the Prepetition Indebtedness and to the extent that the value of the Prepetition Collateral is less than the amount of the Prepetition Indebtedness.

### C.    AUTHORITY TO USE CASH COLLATERAL

30.    Authorized Use of Cash Collateral.  Subject to the terms and conditions of the Interim Order, this Final Order, and the Senior DIP Financing Documents, the Debtors are authorized to use Cash Collateral through the earlier to occur of August 30, 2008, or any date which is a Termination Date.  Cash Collateral may be used only for the same purposes as permitted for loans under the Senior DIP Financing Documents and in compliance with the Budget.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or any Debtor's use of any Cash Collateral or other Proceeds resulting therefrom, except as permitted in the Interim Order, this Final Order, or the Senior DIP Financing Documents.  Subject to paragraph 39, all Cash Collateral used by the Debtors shall be deemed Revolving Loans under the Senior DIP Credit Agreement and shall be afforded all the claims, rights, liens and protections attendant thereto.

31.    Adequate Protection Liens.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, to the extent any Prepetition Indebtedness remains outstanding after entry of this Final Order and the closing of the Senior DIP Credit Agreement, as adequate protection for the interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral on account of the Debtors' use of Cash Collateral and other diminution in value of the Prepetition Collateral, the Debtors hereby grant to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, continuing, valid, binding, enforceable, and perfected postpetition security interests and liens (the "Adequate Protection Liens") in and on the Prepetition Collateral.  The Adequate Protection Liens will be deemed to be included within the definition of "Collateral" as

such term is defined under the Prepetition Senior Credit Agreement for all purposes, including, without limitation, such that any Proceeds or consideration derived from the Adequate Protection Liens shall be deemed to constitute Proceeds of "Collateral", as treated under the Prepetition Senior Credit Agreement.

32.     Priority of Adequate Protection Liens.  The Adequate Protection Liens shall be subordinate only to the Senior DIP Liens and the Carve-Out Amount, but otherwise shall be first, prior, senior, perfected, and superior to any other security interest in, lien on, or claim against, any of the Collateral.  Notwithstanding the provisions hereof, the Prepetition Indebtedness shall not be repaid from or have the ability to seek payment from avoidance actions under Chapter 5 of the Bankruptcy Code and proceeds thereof or commercial tort claims and proceeds thereof. Except as provided in the previous sentence, the Adequate Protection Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 cases, in a superseding proceeding, any successor cases, or upon the dismissal of any of the Chapter 11 cases.  The Adequate Protection Liens shall not be subject to section 551 of the Bankruptcy Code.

33.     Adequate Protection Superpriority Claim.    To the extent any Prepetition Indebtedness remains outstanding after entry of this Final Order and the closing of the Senior DIP Credit Agreement, as further adequate protection for the interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral on account of the Debtors' use of Cash Collateral and other diminution in value of the Prepetition Collateral, the Prepetition Agent and the Prepetition Lenders are each hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now

existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 of the Bankruptcy Code (collectively, the "Adequate Protection Superpriority Claim"). The Adequate Protection Superpriority Claim will be deemed to be included within the definition of "Collateral" as such term is defined under the Prepetition Senior Credit Agreement for all purposes, including, without limitation, such that any Proceeds or consideration derived from the Adequate Protection Superpriority Claim shall be deemed to constitute Proceeds of "Collateral", as treated under the Prepetition Senior Credit Agreement. However, the Adequate Protection Superpriority Claim shall be subordinate to the obligations incurred under the Senior DIP Credit Agreement and the Carve-Out Amount. Notwithstanding the provisions hereof, the Adequate Protection Superpriority Claim shall not be paid from avoidance actions under Chapter 5 of the Bankruptcy Code and proceeds thereof or commercial tort claims and proceeds thereof.

### D.    CARVE-OUT FOR PROFESSIONAL FEES AND USE OF PROCEEDS

34.    Definition of "Carve-Out". As used in this Final Order, "Carve-Out" means (i) prior to and in the event of the occurrence and during the continuance of an Event of Default without waiver or cure, allowed and unpaid professional fees and disbursements incurred by the Debtors and the Committee (other than any such fees and disbursements incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Lenders or the Prepetition Agent) in an aggregate maximum amount not to exceed $1,365,000.00 (the "Carve-Out Amount"), plus (ii) all fees required to be paid to the Clerk of the Bankruptcy Court and fees pursuant to 28 U.S.C. § 1930. Notwithstanding the foregoing, so long as an Event of Default shall not have occurred and be

continuing or to the extent an Event of Default has occurred and is continuing and the Required Lenders have consented, the Debtors are authorized to use Proceeds of the Senior DIP Financing to pay, and shall pay, as the same may be due and payable consistent with any orders entered by the Court with respect to the payment of such fees and expenses, the fees and expenses (collectively, the "Professional Fees and Expenses") in the specific line item amounts set forth in the Budget attached hereto as Exhibit A, of: (i) professionals (including, without limitation, attorneys, accountants, appraisers, and consultants) retained by the Debtors with Court approval (the "Debtor Professionals"); (ii) professionals (including, without limitation, attorneys, accountants, appraisers, and consultants) retained by the Committee with Court approval (the "Committee Professionals"; together with the Debtor Professionals, "Professional Persons"); and (iii) all fees required to be paid to the Clerk of the Bankruptcy Court and fees pursuant to 28 U.S.C. § 1930, and all amounts set forth in subparagraphs (i) and (ii) above shall reduce the Carve-Out as they are allowed and paid pursuant to the Budget.  The Debtors shall maintain in accordance with the Senior DIP Credit Agreement a separate segregated blocked escrow account (the "Fee Account") the terms of which shall be subject to review and approval by the Senior DIP Agent.  Subject to the Budget, the Fee Account shall be funded on Monday of each of the weeks of the Budget with the specific line item amount set forth for the fees and expenses of Professional Persons in such Budget for that week, which Fee Account shall be maintained in escrow solely for the payment of: (i) Professional Fees and Expenses only to the extent that such Professional Fees and Expenses are authorized to be paid pursuant to the procedures approved by this Court and subject to the terms of this Final Order, and (ii) all fees required to be paid to the Clerk of the Bankruptcy Court and fees pursuant to 28 U.S.C. § 1930.  Notwithstanding the event of the occurrence and during the continuance of an Event of Default without waiver or cure, the

Debtors shall nonetheless be permitted at all times to use funds in the Fee Account to pay allowed Professional Fees and Expenses in accordance with the procedures approved by this Court, whether such Professional Fees and Expenses are incurred prior to or after an Event of Default. Nothing herein shall preclude the Senior DIP Agent or Senior DIP Lenders from asserting an objection to the fees and expenses sought to be paid under sections 330, 331, and 503 of the Bankruptcy Code.

35.    Limitations on Use of Senior DIP Lender Funds. From and after the Petition Date, the Proceeds of the Senior DIP Indebtedness and the Senior DIP Collateral (collectively, the "Senior DIP Lender Funds") shall not, directly or indirectly, be used to pay expenses of the Debtors or otherwise disbursed except for (i) those expenses and/or disbursements that are permitted under the Senior DIP Financing Documents and the Budget approved by the Senior DIP Agent, including but not limited to repayment of the Prepetition Indebtedness, subject to the terms of this Final Order, (ii) compensation and reimbursement of expenses allowed by this Court to Professional Persons and fees payable pursuant to 28 U.S.C. § 1930 consistent with this Final Order, and (iii) amounts due to any of the Secured Parties and their accountants, attorneys, or other professionals hereunder or under the other Senior DIP Financing Documents; provided, however, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause and shall not affect the right of the Senior DIP Agent, the Senior DIP Lenders, or the Committee to object to the allowance and payment of any such amounts. It shall be an Event of Default under the Senior DIP Credit Agreement if any adequate protection or budget approval rights pursuant to any orders entered by the Court prior to the entry of this Final Order are extended or replaced without the approval of the Senior DIP Agent in its

sole discretion (other than the adequate protection provisions granted pursuant to this Final Order).

36.    <u>No Surcharge</u>.  Upon entry of this Final Order, in consideration of the Senior DIP Credit Agreement and the Carve-Out, in no event shall any costs or expenses of administration be imposed upon the Prepetition Agent, the Prepetition Lenders, the Prepetition Collateral, the Senior DIP Agent, the Senior DIP Lenders, or the Senior DIP Collateral pursuant to sections 506(c) and/or 105(a) of the Bankruptcy Code or any similar principle of law or otherwise without the prior written consent of the Senior DIP Agent and the Senior DIP Lenders, and no such consent shall be implied from any action, inaction, or acquiescence by the Senior DIP Agent or Senior DIP Lenders, or otherwise.  In light of their agreement to subordinate their Liens and Superpriority Claims to the Carve-Out, the Senior DIP Agent and the Senior DIP Lenders shall be entitled to all of the benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to such parties with respect to the Proceeds, product, offspring, or profits of any of their Collateral.

37.    <u>Use of Proceeds</u>.  The Proceeds of the Senior DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the Senior DIP Credit Agreement, and strictly in accordance with the Budget, for (a) working capital and general corporate purposes, (b) payment of costs of administration of the cases, to the extent set forth in the Budget, and (c) upon entry of this Final Order, payment in full of the Prepetition Indebtedness. Upon payment in full of the Prepetition Indebtedness, all rights, liens, claim, and interests provided for in the Prepetition Senior Credit Agreement and hereunder continue to exist and remain in full force and effect for the benefit of the Postpetition Agent, Postpetition Lenders, and the other Secured Parties.  Prior to the remittance to the Senior DIP Agent of any Proceeds of the

Senior DIP Collateral required to be remitted to the Senior DIP Agent by this Final Order, the Debtors shall be deemed to hold such Proceeds in trust for the benefit of the Senior DIP Agent and the Senior DIP Lenders.

E.    **TREATMENT OF PREPETITION INDEBTEDNESS AND PREPETITION LIENS**

38.    Validity of Prepetition Indebtedness and Liens.  The Debtors have represented, acknowledged, stipulated, and agreed that all liens and security interests of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral are legal, valid, binding, enforceable, properly perfected, and non-avoidable, that the Prepetition Indebtedness is allowable as a fully secured claim against the Debtors, and the Prepetition Indebtedness is valid, legal, binding, and enforceable and not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of recharacterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable law, or otherwise.

39.    Challenges to Prepetition Liens.  In consideration of the Senior DIP Agent's and the Senior DIP Lenders' agreement to provide the Senior DIP Financing pursuant to the Senior DIP Financing Documents, and the Prepetition Agent's and the Prepetition Lenders' consent to the use by the Debtors of their Cash Collateral and to the protections granted to the Senior DIP Agent and the Senior DIP Lenders in the Senior DIP Financing Documents, each of the Debtors has waived and shall be barred from (i) challenging the amount, validity, extent, perfection, or priority of or seeking to set aside, avoid, offset, or subordinate any of the Prepetition Indebtedness or any Liens or security interests of the Prepetition Agent and/or the Prepetition Lenders in the Prepetition Collateral, and (ii) asserting any other claims or causes of action against the Prepetition Agent and/or the Prepetition Lenders including, without limitation, claims for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, or 550 of the Bankruptcy

Code. Notwithstanding the foregoing, and anything in the Senior DIP Financing Documents to the contrary, including the Debtors' acknowledgements, representations, stipulations, and releases herein solely as they relate to the Prepetition Agent, the Prepetition Lenders, and/or the Prepetition Financing, the Committee or any party-in-interest, including a Chapter 7 or Chapter 11 trustee appointed or elected during the Investigation Period (defined below), shall be permitted to investigate (subject to the limitation set forth herein) and challenge, in accordance with the Federal Rules of Bankruptcy Procedure, the validity, enforceability, priority, perfection, or amount of the Prepetition Indebtedness or Prepetition Lenders' liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Prepetition Agent and/or a Prepetition Lender on behalf of the Debtors' estates, which shall be filed no later than 75 days from the Petition Date or with respect to the Committee not later than 75 days after the date of the appointment of the Committee (the "Investigation Period"). The Investigation Period may be extended by the Court for cause shown. The Committee is hereby granted standing to commence as appropriate a contested matter or adversary proceeding as contemplated by this paragraph; provided, however, that notwithstanding the grant of standing to the Committee, the Court expressly does not find that any claims that may be brought by the Committee pursuant to this paragraph are or would be meritorious; and provided further that the Prepetition Agent, Prepetition Lenders, Senior DIP Agent, Senior DIP Lenders, and other Secured Parties expressly reserve all of their rights, claims, and defenses. Subject to the terms of this paragraph, the grant of adequate protection to the Prepetition Agent and Prepetition Lenders pursuant to the Interim DIP Order and this Final Order and the repayment of the Prepetition Indebtedness pursuant to the Interim DIP Order and this Final Order, shall be without prejudice to the rights of the Committee to challenge the Prepetition Agent's and Prepetition Lenders'