# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| JEVIC HOLDING CORP., et al.,[1] ) | Case No. 08-11006 (BLS) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | Obj. Deadline: February 1, 2011 at 4:00 PM (ET) |
| ) | Hearing Date: February 8, 2011 at 9:30 AM (ET) |

## DEBTORS' NINTH MOTION PURSUANT TO 11 U.S.C. §105(a) AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ENTRY OF AN ORDER APPROVING CERTAIN SETTLEMENTS

The debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion") this Court for entry of an order pursuant to section 105(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended, (the "Bankruptcy Code"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the Settlement Agreements and Releases ("Settlement") entered into between Debtors and Avaya Inc. ("Avaya"); Burlington Chemical Co., LLC ("Burlington Chemical"); D.O.T. Tiedown & Lifting Equipment, Inc. ("D.O.T."); Duke Energy Carolinas, LLC ("Duke Energy"); Interstate Distributor Co. ("Interstate"); The Lehigh Press LLC, formerly known as The Lehigh Press, Inc. ("The Lehigh Press"); Midland Transport Limited ("Midland Transport"); OCEE, LLC ("OCEE"); Truck City of Gary, Inc. ("Truck City of Gary"); and United HealthCare Insurance Company ("United HealthCare") (collectively, the "Settling Parties"). True and correct copies of the Settlement Agreement and Release for each of the Settling Parties are attached hereto as Exhibits "A" through "J". In support of this Motion, Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Jevic Holding Corp. (8738), Creek Road Properties, LLC (9874), and Jevic Transportation, Inc. (3402).

PHIL1 1357944-1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On May 20, 2008 (the "Petition Date"), each of the Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On June 4, 2008, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee"). The Debtors are continuing in possession of their assets and are operating their businesses, as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code

### A.    Overview of the Debtors' Corporate Structure and Business

3. The Debtors are comprised of three entities, Jevic Holding Corp. ("JTX"), Creek Road Properties, LLC ("Creek Road"), and Jevic Transportation, Inc. ("Jevic"). All of the operations of the Debtors occur through Jevic. Creek Road holds no assets and has no operations. JTX holds 100% of the issued and outstanding stock of Jevic and has no independent operations.

4. Jevic was a hybrid less-than-truckload ("LTL") and truckload ("TL") carrier providing regional and inter-regional time definite delivery across the United States and parts of Canada. Jevic's operating model eliminated many of the multiple transfers and interim handling of other freight carriers resulting in higher service quality and lower freight claims with less capital investment than traditional hub-and-spoke networks.

5. Jevic also operated a separate operating division, Jevic Transportation Services ("JTS"). JTS provided a wide variety of non-asset based freight brokerage services to a diverse customer base. JTS was primarily focused on truckload freight, which is responsible for 80% of its

2

revenue, but also provided a variety of services including LTL, rail, air, and expedited transport. JTS utilized a network of over 700 carriers and a non-proprietary transportation management system. JTS generated approximately five percent of Jevic's revenue.

6. Jevic began operations in 1981 utilizing a unique LTL/TL operating model. Jevic had an initial public offering in 1997 and was acquired by Yellow Corporation in 1999. In 2002, Yellow spun off Jevic and its sister company, Saia Motor Freight Line to form SCS Transportation.

7. In January of 2006, SCS Transportation announced it was evaluating strategic alternatives including the sale of Jevic. As a result of this announcement, customers were uncertain about the future of Jevic and revenue significantly decreased in the first half of 2006. In June 2006, Sun Transportation, LLC ("STL"), which is owned by Sun Capital Partners, IV, LP ("Sun"), acquired Jevic. STL continues to own substantially all of the stock of JTX, the parent of the other Debtors.

8. Jevic employed approximately 1,785 employees, none of which were subject to a collective bargaining agreement. In 2007, the driver force had a 27% turnover rate, which is significantly lower than the industry average of 120%. Prior to the Petition Date, the Debtors terminated approximately 90 percent of their employees.

9. The Debtors served over 3,500 customers across a diverse range of industries. The customer base was significantly diversified. As of December 31, 2007, Jevic's top 10, 25 and 50 customers accounted for 14.5%, 25.2% and 34.5% of revenue respectively. Jevic established itself as a highly reliable carrier, with a specialty in the area of chemicals requiring freeze protection. Approximately 40% of Jevic's revenue resulted from chemical and chemical related sectors.

10. Jevic was headquartered in Delanco, NJ and had its largest terminal on the premises. The Debtors also operated nine additional terminals and one remote sales office throughout the United States. All of the Debtors' facilities were leased. Prior to the Petition Date, the Debtors were in the process of consolidating their operations and closing four of their terminals including locations in Charlotte, North Carolina, Atlanta Georgia, Cincinnati, Ohio, and Memphis Tennessee.

### B.   Events Leading to the Bankruptcy Filing

11. The Debtors' revenue began to suffer a significant reduction in the fourth quarter of 2006 due to a variety of factors including the decline in the housing market, the tightening of the credit markets, and the slowdown in the automotive industry, which have led to a nationwide decline in freight volumes. Jevic's revenue declined by 8.4% in 2006.

12. In 2007, Jevic instituted a number of initiatives focused on improving operating efficiencies and decreasing fixed costs through eliminating redundant headcount, streamlining processes, and realigning its operating network. The Debtors realized approximately $19 million of annualized fixed cost reductions, however, the freight volume slowdown that began in 2006 continued and freight revenue decreased 7.7% in 2007. Additionally, the Debtors' EBITDAR was negatively impacted by the record escalation of fuel costs. As a result of these items, the Debtors first began to default on their covenants in their Prepetition Facility at the end of September 2007.

13. The Debtors continued to implement profitability improvement initiatives in 2008. These initiatives included increasing business with its most profitable customers, eliminating unattractive freight, increasing fuel surcharges, and enhancing process efficiency. The Debtors believed that these initiatives would increase their EBITDAR by over $8 million in 2008. The

Debtors also attempted to increase their EBITDAR by closing four terminals to geographically restructure their operations.

14. Although the Debtors continued to aggressively pursue costs savings and revenue generating initiatives, the reduction in freight volume, record fuel costs and tightening credit markets prevented them from escaping their defaults on the Prepetition Facility, caused an increase in the Debtors' liquidity problems and led to the commencement of these cases.

15. The Debtors are currently analyzing and pursuing claims on behalf of the estate, including the avoidance and recovery of pre petition transfers pursuant to sections 547 and 550 of the Bankruptcy Code ("Preference Claims").

## RELIEF REQUESTED

16. By this Motion, the Debtors request that the Court approve the proposed Settlements by which the Debtors seek to resolve certain Preference Claims.

## BASIS FOR RELIEF REQUESTED

17. This Court has the authority to grant the relief requested in this Motion pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order. . . that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Rule 9019 grants the Court authority to approve settlements of claims and controversies after notice and a hearing.[2] Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy 9019.03[1] (15th ed. 1993)).

---

[2] Bankruptcy Rule 9019 provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

18. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)). To reach such a determination, the Court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *Martin*, 91 F.3d at 393. In striking this balance, the court should consider the following factors:

> (a) The probability of success in the litigation;
> (b) The complexity, expense and likely duration of the litigation;
> (c) The possibilities of collecting on any judgment which might be obtained;
> (d) All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and
> (e) Whether the proposed compromise is fair and equitable to the debtors, their creditors, and other parties in interest.

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968); *see also, Martin*, 91 F.3d at 393. Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425. The *TMT* rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved, rather, the Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 Collier on Bankruptcy, ¶ 9019.2, 9019.4 (15th ed.) (quoting *In re Drexel Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991)). *See also, Cosoff v. Rodman (In re W.T. Grant Co)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983).

19. Applying these standards to this case, the Debtors believe that the Settlements are in the best interests of the estate and its creditors and are fair and equitable. The Debtors believe it is in

the best interest of the estate and its creditors to resolve the Preference Claim in this manner given the amounts at issue and the expense of pursing the Settling Parties in an adversary proceeding. Absent this settlement, the Debtors would be required to litigate against the Settling Parties, which would consume further resources, diminish distributable assets available for creditors, and lead to an uncertain outcome given the potential defenses available to the Preference Parties. Moreover, even if the Debtors completely prevailed, the potential delay in obtaining final judgments against the Settling Parties and the probability of collecting on the judgments could impair administration of the estate in a timely fashion.

20.     The Settlements result in the payment to the Debtors for the benefit of the estate of approximately $101,000.00. Attached hereto as Exhibit "K" is a chart summarizing for each Settling Party the total amount of the transfers that were made during the ninety (90) day period prior to the Petition Date and the amount of that party's settlement. The Settling Parties with the exception of Burlington Chemical, Duke Energy, Midland Transport, and Truck City of Gary are waiving their right to file a claim under section 502(h) of the Bankruptcy Code in the amount of their settlement. For these reasons, in addition to the affirmative defenses proffered by the Settling Parties, it is respectfully submitted that all ten (10) Settlements fall well within the "range of reasonableness" the Court is required to consider. Accordingly, for the reasons set forth herein, it is respectfully requested that the Motion be granted.

## NOTICE

21.     Notice of this Motion has been given to (a) the United States Trustee, (b) counsel to the Debtors' prepetition lenders and debtor-in-possession lenders, (c) counsel to the Committee, (d) counsel for the Settling Parties, and (e) those parties who have requested special notice pursuant to Bankruptcy Rule 2002. The Debtors submit that the foregoing notice is sufficient for entry of an Order on the Motion.

7

PHIL1 1357944-1

## NO PRIOR REQUEST

22.  No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, in the form attached hereto, granting the relief requested herein and such other and further relief as is just and proper.

Dated: January 21, 2011　　　　　　KLEHR HARRISON HARVEY
　　　　　Wilmington, Delaware　　　　BRANZBURG LLP

　　　　　　　　　　　　　　　　　By:   */s/ Linda Richendefer*
　　　　　　　　　　　　　　　　　　　　Linda Richenderfer (DE Bar No. 4138)
　　　　　　　　　　　　　　　　　　　　Domenic E. Pacitti (DE Bar No. 3989)
　　　　　　　　　　　　　　　　　　　　919 Market Street, Suite 1000
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　Telephone: (302) 426-1189
　　　　　　　　　　　　　　　　　　　　Facsimile: (302) 426-9193