IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JEVIC HOLDING CORP., *et al.*, | ) | Case No. 08-11006 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS, on behalf of the bankruptcy estates | ) | |
| of JEVIC HOLDING CORP., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | Adv. Pro. No. 08-51903 (BLS) |
| | ) | |
| The CIT GROUP/BUSINESS CREDIT, INC., in its | ) | |
| capacity as Agent, and SUN CAPITAL PARTNERS | ) | |
| IV, LP, SUN CAPITAL PARTNERS | ) | |
| MANAGEMENT IV, LLC, and SUN CAPITAL | ) | |
| PARTNERS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**JOINT MOTION OF THE DEBTORS, CIT, SUN CAPITAL AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT
TO 11 U.S.C. §§ 105(a), 349 AND 1112(b) AND FED. R. BANKR. P. 9019 FOR ENTRY
OF AN ORDER: (I) APPROVING SETTLEMENT AGREEMENT AND RELEASING
CLAIMS; (II) DISMISSING THE DEBTORS' CASES UPON IMPLEMENTATION
OF SETTLEMENT; AND (III) GRANTING RELATED RELIEF**

Jevic Holding Corp. ("JHC"), Jevic Transportation Inc. ("Jevic") and Creek Road

Properties LLC ("Creek Road") (collectively the "Debtors"), The Official Committee of

Unsecured Creditors (the "Committee"), Sun Capital Partners IV, LP, Sun Partners Management

IV, LLC and Sun Capital Partners, Inc. (collectively, "Sun"); and The CIT Group/Business

Credit, Inc. as agent ("CIT") for the lenders (the "Lender Group") under the loan facilities

described in the complaint filed in the above-captioned Adversary Proceeding (all hereinafter

referred to in this Joint Motion (the "Joint Motion") as a "Party" or collectively, the "Parties"),

by and through their respective undersigned counsel, hereby move this Court, pursuant to sections 105(a), 349 and 1112(b) of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended (the "Bankruptcy Code"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Settlement and Dismissal Order") (i) approving the Settlement Agreement and Release (the "Settlement Agreement") entered into between and among the Parties, (ii) dismissing the Debtors' Chapter 11 Cases (defined below) upon implementation of the Settlement Agreement; and (iii) granting related relief. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A. In support of the Joint Motion, the Parties respectfully state the following:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 349 and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## FACTUAL BACKGROUND

1.      On May 20, 2008 (the "Petition Date"), the Debtors filed in this Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases")[1] and have continued in possession of their property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      No trustee or examiner has been appointed in these Chapter 11 Cases.

3.      On June 4, 2008, the United States Trustee appointed the Committee.

---

[1] JHC was assigned Case No. 08-11006, Jevic was assigned Case No. 08-11008 and Creek Road was assigned Case No. 08-11007.

2

4.      Jevic[2] was a hybrid less-than-truckload and truckload carrier that provided regional and inter-regional time definite delivery across the United States and parts of Canada.

5.      The Debtors began operations in 1981, had an initial public offering in 1997, and were acquired by Yellow Corporation in 1999. Jevic was spun off to form SCS Transportation in 2002. In June 2006, Sun Transportation, LLC ("STL"), which is owned by Sun Capital Partners, IV, acquired the Debtors.

6.      As of the Petition Date, the Debtors were borrowers under a secured credit agreement (the "Prepetition Facility") dated as of July 28, 2006, with CIT and the Lender Group. As of December 31, 2007, the Debtors had $25.4 million of borrowings and $27.8 million of outstanding letters of credit, for a total balance of $53.2 million (the "Prepetition Debt"), under the Prepetition Facility.

7.      In connection with a forbearance agreement entered into between the Debtors and Lender Group on January 8, 2008, Sun provided a $2 million limited guaranty of the Prepetition Facility. Prior to the Petition Date, Sun paid CIT in respect of such guaranty and thus acquired by subrogation a last-out claim against the Debtors secured by substantially all of the Debtors' assets, which claim is to be allowed pursuant to the Settlement Agreement and Release.

8.      Immediately prior to the Petition Date, the Debtors commenced a wind-down process pursuant to which they ceased substantially all of their operations and terminated approximately 90% of their employees. Post-petition, all of the Debtors' tangible assets were liquidated, and the proceeds were used to repay the outstanding obligations owed to the Lender Group under the Prepetition Facility, which had been "rolled up" into the DIP financing facility. See Final Order (i) Authorizing Debtors-in-Possession to Obtain Senior Debtor in Possession

---

[2] JHC is the parent of Jevic and Creek Road. All of the Debtors' operations occurred through Jevic.

Financing; (ii) Granting Liens, Security Interest, and Super Priority Status; (iii) Authorizing Use of Cash Collateral; and (iv) Affording Adequate Protection to Prepetition Lenders entered on June 20, 2008 (the "Final DIP Financing Order") [Docket No. 118].

9.      Pursuant to the Final DIP Financing Order, the Committee was granted standing to assert claims against the Lender Group as set forth therein.  Pursuant to that Order, on December 31, 2008, the Committee commenced an adversary proceeding by filing a complaint against CIT, Adv. Pro No. 08-51903 (BLS) (the "Adversary Proceeding") asserting claims arising from Sun's acquisition of Jevic pursuant to a leveraged buyout.  The complaint was later amended on June 30, 2010 to add the Sun parties as defendants.  Following a ruling by the Court on CIT's motion to dismiss the complaint rendered on September 15, 2011, the Committee filed a second amended complaint against CIT and Sun on October 7, 2011, to which Sun has filed responsive pleadings and CIT has filed responsive pleadings including a counterclaim against the Committee.

10.     Rather than litigate the claims in the Adversary Proceeding, the Parties commenced discussions in March, 2012 regarding the terms under which the Adversary Proceeding could be settled and the Chapter 11 Cases disposed of, insofar as all other assets of the estate (including all avoidance actions) have been monetized and there is no further need for administration of these estates by the Bankruptcy Court once the Adversary Proceeding is resolved.  To this end, the parties have reached the terms of the Settlement Agreement.  The material provisions of the Settlement Agreement are summarized below.

## THE SETTLEMENT AGREEMENT

11.     In order to resolve the Adversary Proceeding and bring these Chapter 11 Cases to an orderly conclusion, the Parties have agreed, subject to the Court's approval, to the terms and conditions of the Settlement Agreement which resolve all claims that the Parties may have

4

against each other, and provides for (a) the exchange of releases, (b) the payment of $2,000,000 by CIT to the Debtors, which shall be used to satisfy unpaid chapter 11 allowed administrative claims, (c) the dismissal with prejudice of the Adversary Proceeding, (d) the assignment by Sun of its lien on the estates' remaining assets to a liquidating trust established by the Debtors as grantor, pursuant to the Settlement Agreement, for the exclusive benefit of the Debtors' general unsecured creditors (the "Trust"), (e) the reconciliation of administrative and general unsecured claims during the sixty (60) day period following the "Effective Date" as that term is defined in the Settlement Agreement, and (f) thereafter, the dismissal of the Chapter 11 Cases.[3]

## RELIEF REQUESTED

12.      By this Joint Motion the Parties seek entry of the Settlement and Dismissal Order, substantially in the form attached hereto as Exhibit B providing for:

a.      Authorization and approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019, including the releases described in the Settlement Agreement and dismissal of the Adversary Proceeding with prejudice; and

b.      Dismissal of the Chapter 11 Cases upon the reconciliation and payment of administrative expenses and reconciliation of any remaining disputed general unsecured claims, satisfaction of all unpaid Chapter 11 administrative claims expenses, and upon the Effective Date, the assignment by Sun of its lien on the estates' remaining funds to the Trust pursuant to the Settlement Agreement.

---

[3] The above description of the Settlement Agreement is provided as a summary only, and if there is any conflict between the terms described herein and the Settlement Agreement, the terms of the Settlement Agreement shall control.

A.    **Proposed Procedures for Payment of Administrative Expenses Other Than Professional Fees**

13.    Presently, there are no unencumbered assets in the Debtors' estates.    All the Debtors' assets, including their tangible assets and all avoidance actions (other than the claims asserted in the Adversary Proceeding) have been fully liquidated, and the only asset in the estate is cash in the approximate amount of $2 million, which is subject to Sun's lien described above. Accordingly, there are no available assets to pay outstanding administrative, priority or general unsecured claims at this time.    Pursuant to the Settlement Agreement, provision will be made for the satisfaction in full of all unpaid administrative expenses claims in conjunction with dismissal of the Chapter 11 Cases.

14.    More specifically, the Debtors believe that all valid post-petition administrative expenses incurred in the ordinary course of the Debtors' businesses have been paid, except for certain unpaid professional fees and expenses (collectively, the "Professional Fees") of the professionals of the Debtors and Committee (collectively, the "Professionals").    The Debtors believe the only other valid and unpaid administrative expense claims are those that were timely submitted pursuant to section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claims") as well as certain post Petition Date Taxes (the "Admin Taxes").    A list of the 503(b)(9) Claims and Admin Taxes in the amounts filed prior to the claims bar date is attached as Exhibit C hereto.[4] However, in an abundance of caution, the Debtors have filed a Motion to set a bar date for filing of administrative claims other than 503(b)(9) Claims and Admin Taxes, which were subject of

---

[4] The claims and amounts set forth on Exhibit C are subject to modification after any claims objection is resolved or adjudicated.    A final version of Exhibit C will be filed with the Certification referenced in paragraph 22 hereof and attached as Exhibit E hereto.

the bar date previously set in these Chapter 11 Cases[5]. To the extent that any of these claims are disputed, they will be reconciled during the sixty (60) day period following the Effective Date and prior to dismissal of the Chapter 11 Cases.

15.     Upon the Effective Date of the Settlement, CIT will pay the sum of $2 million to the Debtors. The Debtors believe that this sum will be sufficient to pay in full all unpaid Professional Fees, as well as all allowed 503(b)(9) Claims and Admin Taxes. The Debtors request authority to pay all 503(b)(9) Claims and Admin Taxes, as set forth on Exhibit C, Professional Fees and other allowed administrative claims (collectively, the "Allowed Administrative Expense Claims") upon (i) payment of the Administrative Claim Fund as provided for in the Settlement Agreement and (ii) filing with the Bankruptcy Court of the stipulation dismissing with prejudice the Adversary Proceeding.

**B.     Proposed Procedures for Final Allowance and Payment of Professional Fees**

16.     On June 20, 2008, the Court entered its Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation of Fees and Reimbursement of Expenses for Professionals [Docket No. 119] (the "Interim Compensation Procedures Order"). Since that time, the Professionals have filed interim fee applications pursuant to the Interim Compensation Procedures Order or have otherwise complied with the requirements for compensation under their applicable retention orders. The Professionals' monthly fee applications through [April 2011] (to the extent required) have been filed and approved on an interim basis pursuant to the Interim Compensation Procedures Order..

---

[5] *See* Amended Order Setting Bar Dates for Filing Proofs of Claim [Docket No. 607] entered November 17, 2009.

17.     The Professionals shall file final fee applications within twenty (20) days of the Effective Date. Upon entry of an order or orders on the Final Fee Applications, the Debtors' request approval to pay all allowed fees and expenses that remain unpaid to Professionals.

**C.     Proposed Payment to the Trust for Payments to Holders of General Unsecured Claims**

18.     Consistent with the Settlement and Dismissal Order and as set forth in the Settlement Agreement, the Debtors and the Committee propose a streamlined and efficient method of making distributions from the Trust to holders of allowed general unsecured claims so that the funds may be distributed to them on a pro rata basis as quickly and easily as possible following the dismissal of the Chapter 11 Cases.

19.     The Debtors have engaged in a process to resolve general unsecured claims asserted against the Debtors, including the filing and prosecution of several rounds of claims objections pending before the Court.

20.     Annexed as Exhibit D to this Joint Motion is a schedule (the "General Unsecured Claims Schedule") [6]of the claims the Debtors believe should constitute allowed general unsecured claims against their estates (collectively, the "Allowed GUC Claims," and each individually, an "Allowed GUC Claim") for purposes of distribution under the Settlement Agreement.

21.     The amounts set forth on the General Unsecured Claims Schedule represent (a) the general unsecured claim amount set forth in the proof of claim filed by the creditor, if any, on or before the claims bar date, excluding duplicative proofs of claim and excluding claims for which an objection has been adjudicated, and (b) with respect to those holders of general

---

[6] The claims and amounts set forth on Exhibit D are subject to modification after any claims objection is resolved or adjudicated. A final version of Exhibit D will be filed with the Certification referenced in paragraph 22 hereof and attached as Exhibit E hereto.

8

unsecured claims that have not filed a proof of claim, the scheduled general unsecured claim amount, if any, for such creditor set forth in the Debtors' schedules of assets and liabilities, excluding duplicative scheduled amounts or those that were scheduled as "contingent," "unliquidated," or "disputed," to the extent the creditor did not file a timely proof of claim. The Debtors and the Committee do not anticipate further reconciling the Allowed GUC Claim amounts beyond excluding duplicative claims and completing the prosecution of the pending claims objections prior to dismissal of the Chapter 11 Cases. Using the funds subject to Sun's lien assigned to it upon the dismissal of the Chapter 11 Cases, the Trust established under the Settlement Agreement will make distributions to holders of Allowed GUC Claims on a pro rata basis as soon as practicable following the dismissal of the Chapter 11 Cases.

**D.       Certification of Counsel and Request for Dismissal**

22.       After the completion of distributions to the Trust, and payment of Allowed Administrative Expense Claims as described above, the Debtors request that the Court dismiss these Chapter 11 Cases upon the filing of a certification of counsel substantially in the form of Exhibit E to this Joint Motion (the "Certification") with the Court by the Debtors and the Committee, at which time the Chapter 11 Cases will be dismissed without the need for a further Order of the Court. The Certification will be filed as soon as reasonably practicable following the completion of the satisfaction of all Allowed Administrative Expense Claims as set forth above. Among other things, the Certification will verify (a) that all quarterly fees of the U.S. Trustee have been paid in full; (b) that all Allowed Administrative Expense Claims have been paid in full; and (c) that all remaining funds in the estates, which are subject to Sun's lien, have been transferred to the Trust to make pro rata distributions to holders of Allowed GUC Claims after dismissal of the Chapter 11 Cases, all as contemplated by the Settlement Agreement and the proposed Settlement and Dismissal Order.

9

23.     The Debtors intend to serve the Certification on the general service list established in these Chapter 11 Cases, including the U.S. Trustee, but will not send the Certification to the Debtors' entire matrix of creditors and parties-in-interest, as such parties will receive reasonable notice of the proposed dismissal through service of the Joint Motion and/or the Notice of the Joint Motion.

24.     Following dismissal of the Chapter 11 Cases, the Debtors request authority to take such actions as are necessary or appropriate to wind up and/or dissolve as corporate entities under applicable state law.

## APPLICABLE AUTHORITY

### A.     The Settlement Agreement Should Be Approved As It Is In The Best Interest Of The Estates And All Parties In Interest

25.     This Court has the authority to grant the relief requested in this Joint Motion in the form of approval of the Settlement Agreement pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order. . . that is necessary or appropriate to carry out the provisions of this title."  Bankruptcy Rule 9019 grants the Court authority to approve settlements of claims and controversies after notice and a hearing.[7]  Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'"  *Myers v. Martin (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1966) (quoting 9 Collier on Bankruptcy 9019.03[1] (15th ed. 1993)).

26.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate."  *In re*

---

[7] Bankruptcy Rule 9019 provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

*Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998) (quoting *in re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997)). To reach such a determination, the Court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *Martin,* 91 F.3d at 393. In striking this balance, the Court should consider the following factors:

    (a)   The probability of success in the litigation;
    (b)   The complexity, expense and likely duration of the litigation;
    (c)   The possibilities of collecting on any judgment which might be obtained;
    (d)   All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and
    (e)   Whether the proposed compromise is fair and equitable to the debtors, their creditors, and other parties in interest.

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-425 (1968); *see also, Martin,* 91 F.3d at 393. Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry,* 390 U.S. at 425. The *TMT* rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved, rather, the Court's obligation is "to canvass the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 Collier on Bankruptcy, ¶ 9019.2, 9019.4 (16th ed. 2011) (quoting *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991)). *See also, Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir. 1983), *cert. Denied* 464 U.S. 822 (1983).

    27.    Applying these standards to this case, the Debtors and the Committee believe that the Settlement is in the best interest of the Debtors' estates and its creditors and is fair and equitable. The Debtors and the Committee believe it is in the best interest of the estates and its creditors to resolve the Adversary Proceeding in this manner given the amounts at issue and the

expense of pursuing CIT and Sun in the Adversary Proceeding. Absent this settlement, the Committee would be required to litigate against CIT and Sun, which would consume all assets in the Debtors' estates, and lead to an uncertain outcome given the potential defenses available to CIT and Sun. Moreover, even if the Committee completely prevailed, the potential delay in obtaining a final judgment against CIT and Sun could impair administration of the Debtors' estates in a timely fashion.

28.    The Settlement results in the payment to the Debtors of the sum of $2,000,000.00 for the benefit of the estates plus the transfer to a trust for the benefit of the unsecured creditors of property belonging to Sun worth approximately $2,000,000.00. For this reason, in addition to the defenses and claims and counterclaims of CIT and Sun, it is respectfully submitted that the settlement falls well within the "range of reasonableness" the Court is required to consider. Accordingly, for the reasons set forth herein, it is respectfully requested that this Motion be granted.

**B.    The Court Should Approve the Dismissal of the Chapter 11 Cases.**

29.    The Court should approve the Debtors' proposed procedures for distributions under the Settlement Agreement and for dismissal of these Chapter 11 Cases because, among other things, (a) the Debtors cannot bear the administrative costs of formulating and confirming a plan of reorganization, (b) the Debtors have no remaining estate assets to administer, (c) the proposed procedures provide the most efficient way to distribute the funds under the Settlement Agreement, and (d) the proposed procedures provide for a reasonable and appropriate method for payment of outstanding administrative fees and expenses, including those of Professionals.

30.    Under section 1112(b) of the Bankruptcy Code, a court may dismiss a debtor's chapter 11 case for "cause." 11 U.S.C. § 1112(b); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674

12

(11th Cir. 1984); *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999).  Section 1112(b)(1) of

the Bankruptcy Code states, in pertinent part:

> [O]n request of a party in interest, and after notice and a hearing,
> absent unusual circumstances specifically identified by the court
> that establish that the requested conversion or dismissal is not in
> the best interests of creditors and the estate, the court shall convert
> a case under this chapter to a case under chapter 7 or dismiss a case
> under this chapter, whichever is in the best interests of creditors
> and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).  A determination of cause is made by the Court on a case-by-case basis.

*See Albany Partners*, 749 F.2d at 674.  In addition, the decision to dismiss a case is particularly

committed to the bankruptcy court's sound discretion.  *See In re Camden Ordinance Mfg. Co. of

Ark., Inc.*, 1999 WL 587790, at *2 (Bankr. E.D. Pa. July 21, 1999) (citing *In re Atlas Supply

Corp.*, 857 F.2d 1061, 1063 (5th Cir. 1988)).  As a result, the Court is authorized to dismiss the

Debtors' Chapter 11 Cases upon a showing of cause.

31.    The legislative history of section 1112(b) of the Bankruptcy Code and relevant

case authority indicate that a court has wide discretion to use its equitable powers in disposing of

a debtor's case.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S. Rep. No. 989, 95th

Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5903; *see also In re Preferred

Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss

a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating

that a determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests

in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.2d 1358, 1367 & n.7 (5th

Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of

the Bankruptcy Code); *Albany Partners*, 749 F.2d at 674 (same).

13

32.     Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of sixteen

grounds for dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(A)-(P); *Frieouf v. U.S.*, 938

F.2d 1099, 1102 (10th Cir. 1991) (stating that the list in section 1112(b) of the Bankruptcy Code

is non-exhaustive); *Blunt*, 236 B.R. at 864 (same); *In re Camden Ordinance Mfg. Co. of Ark.,

Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000) ("[T]he bankruptcy court may find 'cause' for

conversion or dismissal for reasons beyond the enumerated examples in § 1112(b)").  One

example of cause is where there is a "substantial or continuing loss to or diminution of the estate

and the absence of a reasonable likelihood of rehabilitation."   11 U.S.C. § 1112(b)(4)(A).

Similarly, cause exists where there is a failure to file or confirm a plan within the time fixed by

the Bankruptcy Code or by order of the court.   11 U.S.C. § 1112(b)(4)(J).   The inability to

effectuate substantial consummation of a confirmed plan constitutes another form of cause

warranting dismissal. 11 U.S.C. § 1112(b)(4)(M).

33.     Dismissal of the Debtors' Chapter 11 Cases is appropriate under the

circumstances because the Debtors are unable to confirm or to effectuate a plan.   Inability to

effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or

where the "core" for a workable plan of reorganization "does not exist."  *See Preferred Door,*

990 F.2d at 549 (quoting *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989)) (finding an

"[i]nability to effectuate a plan arises where debtor lacks the capacity to 'formulate a plan or

carry one out'"); *Blunt*, 236 B.R. at 865 (finding cause to dismiss debtor's case under section

1112(b) of the Bankruptcy Code where "core" for a workable plan of reorganization found to be

nonexistent).

34.     In these Chapter 11 Cases, it is not realistic or even possible for the Debtors to

confirm a Chapter 11 plan.  The Debtors have sold virtually all of their assets, liquidated the

14

balance of their assets, resolved all pending litigation that would result in a recovery to the Debtors' estates and any remaining assets are designated for specific administrative claims or constitute the proceeds of the collateral of Sun and/or the Lender Group. There is no business to reorganize. There is no prospect of distributions to unsecured creditors, other than from the funds under the Settlement Agreement. Accordingly, cause clearly exists to dismiss the Debtors' Chapter 11 Cases under sections 1112(b)(4)(J) and (b)(4)(M) of the Bankruptcy Code due to the Debtors' inability to propose, much less effectuate, a plan.

35.     In addition, if the Debtors' Chapter 11 Cases are not promptly dismissed, the Debtors will continue to incur unnecessary administrative expenses, creating substantial or continuing losses, as referenced in the first element of section 1112(b)(4)(A) of the Bankruptcy Code. The Debtors no longer have any businesses to operate, and they are beyond rehabilitation, meeting the second element of cause under section 1112(b)(4)(A). As a result, the Debtors also have met their burden of proof to show that cause exists to dismiss the Debtors' Chapter 11 Cases under section 1112(b)(4)(A) of the Bankruptcy Code.

36.     Once a court determines that cause exists to dismiss a Chapter 11 Cases, the court must also evaluate whether dismissal is in the best interests of creditors and the estate. *See In re Superior Sliding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994); In re Mazzocone, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996); *In re Warner*, 83 B.R. 807, 809 (Bank. M.D. Fla. 1988). Numerous factors demonstrate that dismissal of these Cases is in the best interests of the Debtors' creditors and estates.

37.     Dismissal of a Debtor's Chapter 11 Cases is in the best interests of creditors where a debtor has nothing left to reorganize and the debtor's assets are fixed and liquidated. *See In re BTS, Inc.,* 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); *Camden Ordinance*, 245 B.R.

15

at 799 (finding that a reorganization to salvage a business which ceased doing business was not feasible); *In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue the reorganization). As explained above, the Debtors have nothing left to reorganize, as essentially all of the Debtors' assets have been liquidated to cash. The only remaining tangible asset in the estates is cash subject to Sun's liens, and the claims in the Adversary Proceeding, which are being dismissed pursuant to the Settlement Agreement. Thus, the only significant remaining tasks are the reconciliation and payment of allowed administrative expenses claims, to be paid on a final basis with the funds designated for such purpose, and the reconciliation of any remaining disputed general unsecured claims. Once these tasks are completed, the Chapter 11 Cases will be ripe for dismissal as there is no other action needed to administer these estates..

38.    The funds to be distributed to the Trust and to pay administrative claims are not property of the Debtors' estates, as they constitute Sun's collateral,[8] which pursuant to the Settlement Agreement, are to be specifically carved out and assigned to the Trust for distribution after the Chapter 11 Cases are dismissed to holders of allowed general unsecured claims, a process for which there is ample precedent. *See, e.g., In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1993) (holding that a secured creditor may share proceeds to which it is otherwise entitled with unsecured creditors); *In re TSIC, Inc.*, 393 B.R. 71, 75-77 (approving the transfer of non-estate funds to a junior class of creditors outside of a plan in connection with the settlement of certain objections to the sale of assets*); In re World Health Alternatives, Inc.*, 344 B.R. 291 (Bankr. D. Del. 2006) (permitting a secured lender to carve out funds from its collateral for the

---

[8] In addition to its lien arising from payment on its $2 million guaranty and its subrogation rights, Sun also was granted a replacement lien on all of the Debtors' assets as adequate protection in a series of cash collateral stipulations so ordered by the Court.

benefit of unsecured creditors in exchange for committee's withdrawal of its objection to motion to sell substantially all of the debtor's assets); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001) (holding that secured lender's distribution to management did not preclude confirmation of the plan). Thus, dismissal of the Debtors' Chapter 11 Cases is in the best interest of creditors because the Debtors' have no ongoing business operations, and the terms and conditions of the contemplated dismissal will result in the payment of all allowed administrative claims notwithstanding the administrative insolvency of the estates, as well as a modest distribution to holders of allowed general unsecured claims from the funds assigned by Sun to the Trust.

39.     Additionally, dismissal of these Chapter 11 Cases is warranted because the apparent alternative-conversion to chapter 7-would not serve the best interests of the Debtors' creditors and estates for the reasons discussed herein. One focus of the test regarding the best interests of creditors is upon whether the economic value of the estate is greater inside or outside of bankruptcy. *See In re Clark*, 1995 WL 495951, at *5 (N.D. Ill. Aug. 17, 1995); *In re Staff Inv. Co., 1*46 B.R. 256, 261 (Bankr. E.D. Cal. 1993). The prime criterion for assessing the best interests of the estate is the maximization of value as an economic enterprise. *See id.*

40.     Under the circumstances presented, conversion to chapter 7 and appointment of a chapter 7 trustee would impose significant and unnecessary additional administrative costs upon the Debtors' estates with no correlative benefit. There are no assets for a potential chapter 7 trustee to administer, and all avoidance actions have been settled or adjudicated. There would be no benefit to (and indeed only a burden upon) the Debtors' creditors and estates by conversion to cases under Chapter 7.

41.    Furthermore, where creditors agree that dismissal is the proper disposition of the case, the test regarding the best interests of creditors is met. *See Camden Ordinance*, 245 B.R. at 798; *Mazzocone,* 183 B.R. at 411-12. This Motion and the Settlement Agreement represent the Debtors' best efforts at reaching a solution that benefits all of their creditors within the confines of the Bankruptcy Code. The Debtors have formulated this Joint Motion in consultation with counsel for the Committee, and the Committee supports the approval of the Joint Motion. Dismissal of the Debtors' Chapter 11 Cases will curtail the unnecessary incurrence of additional administrative costs, further the Bankruptcy Code's goal of efficient administration of the Debtors' estates, and is in the best interests of creditors.

42.    Finally, with respect to the payment of the Allowed Administrative Expense Claims, which include, *inter alia*, 503(b)(9) claims, Admin Taxes and Professionals Fees incurred in connection with these Chapter 11 Cases, it is well-settled that determinations concerning the payment of administrative expenses outside of a plan of reorganization are matters within the sound discretion of the bankruptcy court. *See In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002); *In re Colortex Indus., Inc.,* 19 F.3d 1371,1384 (11th Cir. 1994); *In re Verco Indus.,* 20 B.R. 664, 665 (B.A.P. 9th Cir. 1982); *In re Baptist Med. Ctr. of N.Y., Inc.,* 52 B.R. 417, 421 (E.D.N.Y. 1985). One of the chief factors courts consider in making this determination is bankruptcy's goal of an orderly distribution among creditors and the need to prevent a race to the debtor's assets. *See HQ Global Holdings*, 282 B.R. at 173. The Debtors' proposed mechanism for allowing and paying Allowed Administrative Expense Claims on a final basis meets this goal and provides a reasonable and efficient method for addressing such claims, given that the Debtors do not have the ability to confirm and implement a plan of reorganization.

18

43.     Numerous courts, both in this district and throughout the country, have approved structured dismissals under similar circumstances to the Debtors' cases where the debtor lacks the requisite ability to confirm a Chapter 11 plan and/or the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery. *See, e.g., International Garden Products, Inc., et al.,* Case No. 10-13207 (KJC), Docket No. 541 (Bankr. D. Del. 2010); *In re KB Toys, Inc., a Delaware corporation, et. al.,* Case No. 08-13269 (KJC), Docket No. 914 (Bankr. D. Del. 2009); *In re CFM U.S. Corp., et al.,* Case No. 08-10668 (KJC), Docket No. 1097 (Bankr. D. Del. 2009); *In re Wickes Holdings, LLC, et al.,* Case No. 08-10212 (KJC), Docket No. 1418 (Bankr. D. Del. 2009); *In re Bag Liquidation, Ltd.,* Case No. 08-32096 (SGJ), Docket No. 688 (Bank. N.D. Tex. 2009); *In re Princeton Ski Shop, Inc., et al.,* Case No. 07-26206 (MS), Docket No. 546 (Bankr. D. N.J. 2008); *In re Harvey Elecs., Inc.,* Case No. 07-14051 (ALG), Docket No. 177 (Bankr. S.D.N.Y. 2008); *In re Dawahare's of Lexington, LLC,* Case No. 08-51381 (JMS), Docket No. 316 (Bankr. E.D. Ky. 2008*); In re New Weathervane Retail Corp.,* 04-11649 (PJW), Docket No. 566 (Bankr. D. Del. 2005); *In re Blades Board & Skate, LLC,* Case No. 03-48818 (NLW), Docket No. 126 (Bankr. D. N.J. 2004).

44.     As of the Petition Date the Debtors ceased doing business and during the course of their Chapter 11 Cases liquidated all of their assets and, subject to the approval of the Settlement Agreement, have resolved all the estates claims other than a suit styled *Casimir Czyzewski, Jeffrey Oehlers, et al. v. Jevic Transportation, Inc., et al.,* (Adv. Pro. No. 08-50662) filed by certain former employees (the "WARN Act Claimants") as a putative class action in this Court against the Debtors and Sun (the "WARN Act Claim"). Notably, nothing in the Settlement Agreement or the Settlement and Dismissal Order will effect a release of WARN Act Claimants against Sun, which they are free to prosecute in this Court or any other court of

19

competent jurisdiction. Indeed, the dismissal of the Chapter 11 Cases will not necessarily deprive this court of jurisdiction to resolve the WARN Act Claim. *Porges v. Gruntal & Co., Inc. (In re Porges)*, 44 F.3d 159, 162-63 (2nd Cir. 1995) ("holding that the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement.").

45.    But for the Settlement Agreement the Debtors' estates are administratively insolvent and would not be able to pay their administrative claims in full. The Debtors believe that approval of the Settlement Agreement will provide the Debtors' estates with sufficient funds to pay their Allowed Administrative Expense Claims in full.

46.    The Debtors lack sufficient funds to formulate, confirm, or effectuate a chapter 11 plan that meets the requirements of section 1129 of the Bankruptcy Code. Moreover, even if the Debtors were able to propose a liquidating or other chapter 11 plan, the cost of drafting, soliciting acceptances to, and attempting to confirm a chapter 11 plan would consume all the assets in the Debtors' estates and provide for no distribution to creditors.

47.    Conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code is not likely to yield any recovery to the Debtors' creditors or result in any additional benefit to the Debtors' estates or creditors than what they will realize from dismissal.

48.    Dismissing these Chapter 11 Cases in accordance with the procedures herein is in the best interest of the Debtors, their estates, creditors, and parties-in-interest.

49.    Upon the filing of the Certification, attached hereto as <u>Exhibit E</u>, cause (as such term is defined in section 1112(b) of the Bankruptcy Code) will exist to dismiss these chapter 11 cases.

50.    Cause exists to modify the effects of section 349(b) of the Bankruptcy Code so that all orders entered in these Chapter 11 Cases, including this order, prior to the date of dismissal shall remain in full force and effect for purposes of *res judicata* and otherwise, notwithstanding section 349(b) of the Bankruptcy Code, and section 349 of the Bankruptcy Code shall be of no force and effect.

51.    No reinstatement or revesting of assets of the Debtors or their estates under section 349(b) of the Bankruptcy Code shall occur upon the entry of the dismissal order or the dismissal of the Chapter 11 Cases.

## NOTICE

52.    Notice of and a copy of this Joint Motion has been given to (a) the United States Trustee, and (b) those parties who have requested special notice pursuant to Bankruptcy Rule 2002. Solely the Notice of the Joint Motion, which sets forth the means to obtain a full copy of the Joint Motion, has been given to the parties on the Debtors' creditor matrix. The Parties submit that the foregoing notice is sufficient for entry of an Order on the Motion.

## CONCLUSION

WHEREFORE, the Parties respectfully pray that the court enter an order substantially in the form of the proposed Settlement and Dismissal Order attached hereto as Exhibit B and (ii) grant the Parties such other and further relief as is just.

Dated:  June 27, 2012          KLEHR HARRISON HARVEY BRANZBURG LLP
Wilmington, Delaware

          _____/s/ Domenic E. Pacitti_____
          Domenic E. Pacitti (DE Bar No. 3989)
          Michael W. Yurkewicz (DE Bar No. 4165)
          919 N. Market Street, Suite 1000
          Wilmington, Delaware 19801-3062
          Telephone:    (302) 426-1189
          Facsimile:    (302) 426-9193

          *Counsel to the Debtors and Debtors in Possession*

21

Dated: June 27, 2012
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

_____*/s/ Bruce Grohsgal*_____
Bruce Grohsgal (Bar No. 3583)
Robert J. Feinstein
919 N. Market Street, 17th Floor
P O Box 8705
Wilmington DE 19899-8705 (Courier 19801)
Telephone:  302.652.4100
Facsimile:  302.652.4400
Email:  bgrohsgal@pszjlaw.com
         rfeinstein@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

22

Dated:  June 27, 2012
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_/s/ Curtis S. Miller_

Robert J. Dehney (DE Bar No. 3578)
Curtis S. Miller (DE Bar No. 4583)
1201 North Market Street, 18th Floor
Wilmington, DE 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@mnat.com
cmiller@mnat.com

-and-

James P. Gillespie, P.C. (_pro hac vice_)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
Email: james.gillespie@kirkland.com

and

James A. Stempel
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL  60654
Telephone:  (312) 862-2440
Facsimile:  (312) 862-2000
Email:  jstempel@kirkland.com

_Counsel to Sun Capital Partners IV, LP, Sun Capital
Partners Management IV, LLC, and Sun Capital
Partners, Inc._

23

Dated: June 27, 2012
Wilmington, Delaware

MORRIS JAMES LLP

_____/s/ Stephen M. Miller_____
Stephen M. Miller (DE Bar No. 2610)
Eric J. Monzo (DE Bar No. 5214)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: smiller@morrisjames.com
Email: emonzo@morrisjames.com


-and-

Benjamin C. Ackerly, Esq.
Tara L. Elgie, Esq.
HUNTON & WILLIAMS LLP
Riverfront Plaza, Easter Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Email: backerly@hunton.com
Email: telgie@hunton.com

Richard P. Norton, Esq.
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0005
Telephone: (212) 309-1000
Email: rnorton@hunton.com

*Attorneys for The CIT Group/Business Credit, Inc.*