**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Jevic Holding Corp., *et al.*[1] | ) | Case No. 08-11006 (BLS) |
| Debtors. | ) | |
| | ) | Jointly Administered |

**Objection Deadline:  March 8, 2018
Hearing Date:  March 15, 2018 at 9:30 a.m.**

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
THE MOTION OF FORMER EMPLOYEES FOR AN ORDER (A) ALLOWING THEIR
NEW JERSEY WARN ACT CLAIMS AND (B) DISALLOWING THE CLAIMS OF
CREDITORS THAT RECEIVED AVOIDABLE POST-PETITION TRANSFERS
PURSUANT TO THE STRUCTURED-DISMISSAL SETTLEMENT**

The Official Unsecured Creditors' Committee (the "Committee") of Jevic Holding Corp.,

*et al.* (collectively, the "Debtors") hereby submits its Objection (the "Objection") to the *Motion*

*of Former Employees for an Order (A) Allowing Their New Jersey WARN Act Claims and (B)*

*Disallowing the Claims of Creditors that Received Post-Petition Transfers Pursuant to the*

*Structured-Dismissal Settlement* [Docket No. 1770] (the "Motion"), and in support thereof

respectfully states as follows:

## I.    INTRODUCTION

1.     Through the Motion, the WARN Claimants (as defined below) are attempting to

hijack the above-captioned bankruptcy cases by asking this Court to permit them—and nobody

else—to control the selection of a chapter 7 trustee in the event the cases are converted from

chapter 11.  The WARN Claimants seek to preemptively gerrymander the vote for and thereby

control the selection of a chapter 7 trustee by seeking to object to the allowance of every single

unsecured claim not belonging to a WARN Claimant.

---

[1]  The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the
Debtors, are Jevic Holding Corp. (8738), Creek Road Properties, LLC (9874), and Jevic Transportation, Inc. (3402).

2.      The relief sought in the Motion should be denied as the Motion is defective on several independent procedural and substantive grounds set forth below.  The Motion purports to seek disallowance of over a thousand general unsecured claims.  But omnibus objections to claims like the Motion are subject to the requirements of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").  The Motion fails to comply with the Bankruptcy Rules and Local Rules in at least six respects and on that basis alone should be denied.  Further, the WARN Claimants lack standing to interpose claims objections at all as creditors of the Debtors, and accordingly are not entitled to the relief they seek in the Motion.

3.      Substantively, the Motion suffers from several fatal defects.  None of the Claims as to which disallowance is sought under section 502(d) is the subject of a judgment issued against of the Creditors, nor has an adversary proceeding seeking to unwind an allegedly avoidable transfer even been commenced against any Creditor.  Also, the WARN Claimants' invocation of section 549 of the Code is misplaced and time-barred.  Moreover, the transfers for which the WARN Claimants invoke section 549 cannot be avoided under such section because they were made under the authority of this Court, and further the time to bring such an action has long since expired.  Additionally, equitable tolling does not apply in these circumstances.

4.      The underlying basis for the Motion is that the WARN Claimants want to take control of an election for a hypothetical chapter 7 trustee, however the WARN Claimants hold an adverse interest such that they would not be able to vote for a chapter 7 trustee if an election was held.  Moreover, the WARN Claimants' claims should not be allowed.

5.      The Court should not condone the WARN Claimants' premature and procedurally and substantively defective end-run around the Bankruptcy Code and Bankruptcy Rules by

allowing them to do through the Motion that which they could not otherwise do—object to claims, unilaterally control the selection of a chapter 7 trustee, and have this Court make a finding that fellow creditors have received avoidable transfers.  Accordingly, the Committee respectfully requests that the Court deny the Motion.

## II.    FACTUAL BACKGROUND

6.    On May 20, 2008 (the "Petition Date"), the Debtors filed in this Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") and have continued in possession of their property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

7.    On June 4, 2008, the United States Trustee appointed the Committee.

### A.  The WARN Act Adversary Proceeding

8.    Certain former employees of the Debtors (the "WARN Claimants") brought a class action complaint in the Bankruptcy Court against the Debtors and Sun Capital Partners, Inc. ("SCPI") (on a putative "single employer" theory).  The complaint sought statutory damages under the Worker Adjustment and Retraining Notification Act ("WARN Act")[2], and its New Jersey state-law counterpart (the "NJ WARN Act"),[3] which generally require employers to provide workers with 60 days' notice before termination.[4]

9.    In May 2013, the Bankruptcy Court issued two important rulings in the ongoing WARN Act litigation.  *First*, the Bankruptcy Court granted SCPI summary judgment on the ground that it was not a "single employer" with the Debtors for purposes of WARN Act liability

---

[2] 29 U.S.C. § 2102.

[3] N.J. Stat. Ann. § 34:21-2.

[4] The Debtors paid in full all of its former employees' claims for unpaid wages and benefits through the date of their termination, including without limitation $3 million in accrued vacation and health insurance benefits.

under either federal or state law.[5]  Both the United States District Court for the District of

Delaware (the "District Court") and the United States Court of Appeals for the Third Circuit

subsequently affirmed that decision.[6]  *Second*, the bankruptcy court held that the WARN

Claimants failed to establish liability against the Debtors under the federal WARN Act (which

contains an exception for "business circumstances that were not reasonably foreseeable as of the

time that notice would have been required,"[7] but had established liability against the Debtors

under the New Jersey WARN Act (which contains no such exception).[8]  Importantly, the

Bankruptcy Court's ruling solely found that liability existed.  The amount and priority of the

individual WARN Plaintiffs' claims, and the identity of putative class members holding valid

claims, are issues that have never been adjudicated by any court. Therefore, technically, none of

the WARN Claimants hold allowed claims at this time.  Indeed, the WARN class claimants have

yet to file a proof of claim in the bankruptcy cases, even though their failure to file a timely proof

of claim, let alone a late claim, has been pointed out on many occasions over the past decade.

### B.  The Original Settlement Agreement and Subsequent Procedural History

10.    Pursuant to the Final DIP Financing Order, the Committee was granted standing

to assert claims against the Lender Group as set forth therein.  Pursuant to that Order, on

December 31, 2008, the Committee commenced an adversary proceeding by filing a complaint

against CIT, Adv. Pro. No. 08-51903(BLS) (the "Adversary Proceeding") asserting claims

arising from Sun's acquisition of the Debtors pursuant to a leveraged buyout.  The complaint was

later amended on June 30, 2010 to add the Sun parties as defendants.

---

[5] *See In re Jevic Holding Corp.*, 492 B.R. 416, 433 (Bankr. D. Del. 2013).

[6] *See* 526 B.R. 547 (D. Del. 2014); 2016 WL 4011149 (3d Cir. July 27, 2016).

[7] 29 U.S.C. § 2102(b)(2)(A).

[8] *See In re Jevic Holding Corp.*, 496 B.R. 151, 165 (Bankr. D. Del. 2013).

11.     The Movants[9] and the WARN Claimants commenced discussions in early 2012 regarding the terms under which the Adversary Proceeding could be settled and the Chapter 11 Cases disposed of, insofar as all other assets of the estates (including all avoidance actions) had been monetized and there was no further need for administration of the estates by this Court once the Adversary Proceeding was resolved.  Movants could not get the WARN Claimants to make an offer of settlement, and thereafter Movants negotiated and entered into that certain Settlement Agreement and Release dated June 22, 2012 (the "Original Settlement Agreement").  On June 27, 2012, the Movants filed the *Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [Docket No. 1346] (the "Original 9019 Motion"), asking this Court to (1) approve the Original Settlement Agreement, and (2) dismiss the Chapter 11 Cases upon implementation of the settlement.

12.     The WARN Claimants objected to the Original 9019 Motion by filing on July 25, 2012 the *Memorandum of Law in Opposition to the Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* [Docket No. 1396], and on November 7, 2012, the *Objection In Opposition to the Supplement to (1) Joint Motion of Debtors, CIT, Sun Capital, and Official Committee of Unsecured Creditors for Entry of Order (I) Approving Settlement*

---

[9] The "Movants" are the Debtors, the Committee, Sun Capital Partners IV, LP, Sun Partners Management IV, LLC and SCPI (collectively, "Sun"); and The CIT Group/Business Credit, Inc. as agent ("CIT").

*Agreement and Releasing Claims; (II) Dismissing Debtors' Cases Upon Implementation of*

*Settlement; and (III) Granting Related Relief; and (2) Debtors' Motion for Entry of Order*

*(A) Authorizing Extension of Use of Cash Collateral, and (B) Granting Adequate Protection*

[Docket No. 1479] (collectively, the "<u>WARN Objections</u>").

13.    At a November 13, 2012 evidentiary hearing, the WARN Claimants insisted that

the settlement was invalid as a matter of law because it did not follow the Bankruptcy Code's

priority system insofar as it allocated proceeds for payment to general unsecured creditors but

not to the WARN Claimants, who they argued held disputed priority unsecured claims (their

WARN Act claims) against the Debtors' estates.  This Court rejected that argument in an oral

ruling on November 28, 2012.

14.    The WARN Claimants thereafter moved for a stay pending appeal in this Court.

After this Court denied that request, however, the WARN Claimants — who were advised by the

Movants on the record that they were intended to consummate the settlement — determined not

to seek a stay from the District Court.  In August 2013, the parties consummated the Original

Settlement Agreement, distributing 29 checks to various tax authorities and more than 1,000

checks to general unsecured creditors (collectively, the "<u>Creditors</u>") who had filed proofs of

claim or were otherwise listed in the Debtors' schedules (the "<u>Claims</u>").  The total amount paid

to the Creditors pursuant to the Original Settlement Agreement that were junior in priority to any

claim of the WARN Claimants was $1,069,714.14.  Thereafter on October 11, 2013 this Court

dismissed the Debtors' Chapter 11 Cases.

15.    The WARN Claimants appealed this Court's order approving the settlement to the

District Court, which affirmed in January 2014 and in the alternative dismissed the appeal as

equitably moot in light of the consummation of the Original Settlement Agreement.  The District

Court concluded that this Court had not abused its discretion by deciding on the record presented that the settlement "was in the best interest of the estate and of resolving the pending Chapter 11 cases."[10]  The Third Circuit affirmed the decision of the District Court.[11]  The WARN Claimants sought rehearing *en banc*.  The Third Circuit denied the petition without recorded dissent.

16.    The WARN Claimants then sought the United States Supreme Court's review by filing a petition for writ of *certiorari* presenting a single question: "Whether a bankruptcy court may authorize the distribution of settlement proceeds in a manner that violates the statutory priority scheme."[12]  The WARN Claimants thus urged the Supreme Court to "grant review and hold that settlement proceeds may not be distributed in violation of the Bankruptcy Code's priority scheme."[13]  The Supreme Court granted the writ of *certiorari*.[14]

17.    On March 22, 2017, the Supreme Court issued its decision ruling that the settlement proceeds must be distributed in accordance with Section 1129 of the Bankruptcy Code.  The Court reversed the opinion of the Third Circuit and remanded the case for further proceedings consistent with its opinion.[15]

18.    On May 9, 2017, the Third Circuit vacated its 2015 opinion and remanded the case to the District Court.[16]

---

[10] *In re Jevic Holding Corp.*, 2014 WL 268613, *3 (D. Del. 2014), *citing Martin*, 91 F.3d at 393.

[11] *Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit Inc.*(*In re Jevic Holding Corp.*), 787 F.3d 173 (3d Cir. 2015).

[12] WARN Claimants' *Petition for Writ of Certiorari* at 1.

[13] *Id.* at 3.

[14] *Czyzewski v. Jevic Holding Corp.*, 136 S.Ct. 2541 (2016).

[15] *See Casimir Czyzewski, et al. v. Jevic Holding Corp., et al.,* 137 S.Ct. 973, 987 (2017) ("The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.")

[16] *See Official Comm. of Unsecured Creditors v. CIT Group/Bus. Credit Inc. (In re Jevic Holding Corp.)*, 688 Fed. Appx. 166 (3d Cir. 2017).

19.     The District Court on May 12, 2017, entered the *Order Regarding Mandate From the United States Court of Appeals that the Order of the Bankruptcy Court is Vacated and the Case is Remanded to the United States Bankruptcy Court for Further Proceedings* [Docket No. 1759] remanding the case to this Court.

**C.   The Renewed 9019 Motion**

20.     On February 22, 2018, the Movants filed the *Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Sections 105(a) and 363 and Federal Rule of Bankruptcy Procedure 9019 for Entry of an Order Approving Settlement Agreement* [Docket No. 1772] (the "Renewed 9019 Motion").  Pursuant to the Renewed 9019 Motion, the Movants seek approval of a settlement agreement (the "New Settlement Agreement"), which provides the same monetary recovery to the WARN Claimants they would have obtained had the Original Settlement Agreement not included the "class skipping" provision prohibited by the Supreme Court's opinion.

### III.     ARGUMENT

**A.  The WARN Claimants Lack Standing to Bring the Motion and
Have Failed to Follow the Proper Procedures for Objecting to Claims**

**1.   *The WARN Claimants Filed an Omnibus Claim Objection Without
Following the Proper Procedure***

21.     Although it is not styled as such, the Motion is incontrovertibly an omnibus objection to claims.  *See* Bankruptcy Rule 3007(d) ("objections to more than one claim may be joined in an omnibus objection. . ."); Local Rule 3007-1(a) ("This Local Rule applies to any objection to the allowance of a claim under an omnibus objection (i.e., an objection to claims asserted by more than one claimant)").  As such, the Motion must comply with Bankruptcy Rule 3007(d) – (e) and Local Rule 3007-1, but fails to do so in numerous respects.

22.     First, a substantive omnibus objection to claims "may contain more than one but no more than 150 claims." L.B.R. 3007-1(f)(i).[17]  Here, the WARN Claimants ignore this requirement, filing an omnibus objection to approximately 1,100 claims at once.[18]

23.     Second, an omnibus claims objection must "be filed as either substantive or non-substantive," and the "title of the Objection shall clearly state whether the Objection is on substantive or non-substantive grounds." L.B.R. 3007-1(e)(i)(A)-(B).  Here, the WARN Claimants failed to comply with either of these Local Rules.

24.     Third, omnibus claims objections must be "numbered consecutively with other omnibus objections filed by the same objector." Fed. R. Bankr. P. 3007(e)(5); *see also* L.B.R. 3007-1(e)(i)(C).  The WARN Claimants did not comply with this Bankruptcy Rule or the corresponding Local Rule.

25.     Fourth, omnibus claims objections must "also contain a statement by the objector or the objector's counsel that the Objection complies with this Local Rule." L.B.R. 3007-1(e)(i)(E).  Neither the WARN Claimants nor their counsel made such a representation in the Motion or the accompanying papers, as in fact they could not.

26.     Fifth, an omnibus claims objection must "state the grounds of the objection to each claim and provide a cross-reference to the pages in the omnibus objection pertinent to the stated grounds." Fed. R. Bankr. P. 3007(e)(3).  The Local Rules provide that this information should be included within a table appended as exhibits to an omnibus objection containing, *inter alia*, a "reason for disallowance" of each claim which gives "sufficient detail as to why the claim

---

[17] Local Rule 3007-1(d) provides that an omnibus objection "is deemed to be on a substantive basis unless it is based on one or more" of eight enumerated bases, none of which apply to the Motion.  Accordingly, the Motion constitutes a substantive omnibus claims objection.  L.B.R. 3007-1(d).  In the event that the Motion was a non-substantive omnibus claims objection, it would be limited to objecting to 100 claims at once.  Fed. R. Bankr. P. 3007(d)(6).

[18] Exhibit 4 to the Motion contains a list of approximately 50 claims and Exhibit 5 to the Motion contains a list of approximately 1,050 claims the WARN Claimants seek to disallow.

should be disallowed." L.B.R. 3007-1(e)(iii)(A), (J). Neither Exhibit 4 nor Exhibit 5 to the Motion comply with these directives.

27.    Finally, "[w]hen the Objection is substantive, a copy of the proofs of claim and all supporting documentation shall be provided to the Court" in a tab-separated binder at least fourteen days before the hearing, with the claimants filing a Notice of Submission of Proofs of Claim on the Court's docket. L.B.R. 3007-1(e)(iv). As of today's date—which is seven days before the Court is scheduled to hear the Motion—the WARN Claimants have not done so.

28.    Accordingly, the Motion fails to comply with the Bankruptcy Rules and Local Rules in at least six different respects. "Failure to comply with the applicable rules can have dire consequences, particularly when the local rules amplify the provisions of the national rules concerning filing and hearing provisions." *In re Int'l Diamond Exch. Jewelers*, 188 B.R. 386, 389 (Bankr. S.D. Ohio 1995). Here, the WARN Claimants have failed to comply with six Local Rules and the corresponding Bankruptcy Rules. On that basis alone, the Motion should be denied. *See, e.g., Benson v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 109139, at *8 (E.D. Cal. Aug. 18, 2015) (finding that a district court can dismiss an action for failure to comply with the court's local rules). To the extent that the omnibus claims objection provisions of the Bankruptcy Rules and Local Rules were promulgated to provide protection for claimholders, the failure of the WARN Claimants to follow such rules deprives the Creditors of the protections to which they are entitled.

### 2. *The WARN Claimants Do Not Have Standing to Object to Other Creditors' Claims*

29.    The law in the Third Circuit is clear—"a general creditor of a bankruptcy has no right to contest another creditor's claim or to appeal from the refusal of the court to disallow it unless upon application the trustee has refused to do so and the [court] has authorized the

creditor to proceed in the trustee's name." *Fred Reuping Leather Co. v. Ft. Greene Nat'l Bank*, 102 F.2d 372, 372-73 (3d Cir. 1939); *see also In re Savidge*, 57 B.R. 389, 392 (D. Del. 1986). A "creditor seeking to exercise [the] trustee's authority to object to a claim must establish that the trustee's failure to act is an abuse of discretion." *In re MDC Sys.*, 488 B.R. 74, 80 (Bankr. E.D. Pa. 2013) (internal citation omitted).

30. Here, the WARN Claimants are creditors of the Debtors, and they have not made any demand on the Debtors to object to the Claims. Moreover, even if the WARN Claimants had made (and the Debtors had rejected) a demand to object to the Claims, the WARN Claimants would not be able to establish that such a refusal was an abuse of the Debtors' discretion. As discussed in more detail below, there are numerous reasons why the Debtors would have been well within their discretion to refuse a demand to object to the Claims. For instance, it is premature to object to claims *en masse* where, as here, the amount of dividends to creditors is not known. Further, the Motion contemplates a conversion of these Chapter 11 Cases to chapter 7, but at present there has not even been a motion to convert, and certainly no conversion. Nor, for that matter, has a chapter 7 trustee been appointed or elected. A party seeking to deprive others of rights in an imaginary chapter 7 proceeding should be made to wait until it is appropriate and should follow the rules regarding objections to participation in a contested chapter 7 trustee election. Unsecured creditors should not be deprived of their rights prematurely and made to incur individual expenses over an issue that is not properly before the Court and which was instituted by a process that fails to follow many provisions of the Bankruptcy Rules and Local Rules. Finally, the Court has not previously given authorization to the WARN Claimants to object to the Claims and this fact is fatal to the Motion. Accordingly the WARN Claimants lack standing and the Motion should be dismissed or denied.

31.     There is a primary reason behind the above-articulated rule that creditors may not object to the claims of other creditors without the authority of the bankruptcy court, that such a rule is necessary for orderly and expeditious administration of a bankruptcy estate.  *In re Meade Land & Dev. Co.*, 1 B.R. 279, 282 (Bankr. E.D. Pa. 1979) ("[I]f every creditor was permitted to intervene and participate in matters of litigation, the courts would be engulfed with proceedings and be unable to perform its duties efficiently.").  A similar rule applies with respect to a creditor bringing a cause of action belonging to the bankruptcy estate, in that such an action cannot be brought without prior authority from the bankruptcy court.  *In re Yes! Entm't Corp.*, 316 B.R. 141, 145 (D. Del. 2004); *Official Committee of Unsecured Creditors v. Cablevision Sys. Corp.* (*In re Valley Media, Inc.*), 2003 Bankr. LEXIS 940, at *6 (Bankr. D. Del. Aug. 14, 2003).  Here, the Court is faced with a purported claims objection that likely requires an adversary proceeding to establish its validity (as discussed in section III.C.2 below).

32.     In a case dealing with recovery of a post-petition transfer, the Fifth Circuit expressed the rule in the context of a section 549 dispute.  Section 549 of the Bankruptcy Code only authorizes the "trustee" to seek recovery of post-petition transfers.  The Fifth Circuit determined that such an action can only be brought by a trustee or debtor in possession unless another party seeks authority from the bankruptcy court to bring such an action. *In re Pointer*, 952 F.2d 82, 88-89 (5th Cir. 1992) (citing cases).  In *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000), the Supreme Court decided that a Bankruptcy Code section that says that the "trustee" may bring a particular action does not allow for individual creditors to bring such an action.  Section 549 of the Bankruptcy Code specifically says that a "trustee" may avoid a post-petition transfer.  That language does not allow for individual creditors to bring such actions.  Creditors' committees are often granted standing by the

bankruptcy court to pursue estate causes of action.  It is less clear that individual creditors should be granted such standing.  After all, a creditors' committee is required to be appointed in a chapter 11 case. 11 U.S.C. § 1102(a)(1).  Therefore, a creditors' committee is an official functionary in the administration of the chapter 11 case.  Among the powers granted to the creditors' committee is to perform such other services as are in the interest of those represented. 11 U.S.C. 1103(c)(5).  An individual creditor is not a functionary of the estate and does not have prescribed duties and responsibilities to any constituency but themselves.  It is not clear that an individual creditor may or should be granted authority to act in a matter which is delegated by the Code specifically to a trustee.  Even if such authority may be granted, in light of *Hartford Underwriters*, such a grant should only be allowed sparingly.  There is no pending request before the Court for a grant of standing to the WARN Claimants, and it would be problematic if they did so.

### B.  It is Premature to Consider Objections To and Allowance of Claims

33.     If these Chapter 11 Cases are ever converted to chapter 7, it would be a chapter 7 trustee who would be responsible for objecting to the Claims, if the circumstances merit doing so.[19]  11 U.S.C. § 704(a)(5) ("The trustee shall . . . if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper").  The WARN Claimants themselves would still have no standing to object to the Claims in such a chapter 7 proceeding. *See* section III.A.2, *supra*.

34.     By inclusion of the language "if a purpose would be served" in section 704(a)(5) of the Bankruptcy Code, Congress implicitly recognized the fact that in not all chapter 7 cases is it advisable, prudent, or economical for a chapter 7 trustee to engage in a large-scale claims

---

[19] This duty to object to claims if a purpose would be served, is incorporated into the duties of a chapter 11 debtor in possession by 11 U.S.C. § 1107 and a chapter 11 trustee pursuant to 11 U.S.C. § 1106(a)(1).

objection process.  Through the Motion, the WARN Claimants inappropriately prejudge whether, in a hypothetical chapter 7, it would be prudent for a hypothetical chapter 7 trustee to commence a full-blown claims objection process.  One could certainly concoct a situation in which "a purpose would not be served" for a chapter 7 trustee to object to claims.  For example, in a case such as this one where it is not clear that any distribution will ultimately be paid.  The WARN Claimants are premature in trying to disallow 1,100 unsecured claims when the only purpose is to avoid following the clear rules regarding voting for a chapter 7 trustee and gerrymander the vote in an election if the case is converted.  Moreover, the onus and cost of unnecessary proceedings should not be placed on the 1,100 creditors especially in light of the numerous defects in the Motion and the fact that the Motion is transparently aimed at giving the WARN Claimants exclusive control over the selection of a chapter 7 trustee, a matter only incident to the allowance or disallowance of a claim.  Accordingly, it is simply premature and inappropriate at this juncture in the above-captioned proceedings to engage in a claims reconciliation process, and on that basis the Motion should be denied.

35.     There is pending before this court a Renewed 9019 Motion which would pay the WARN Claimants all that they could have recovered from the Original Settlement Agreement in this case had the absolute priority rule had been followed.  Certainly, that motion should be decided before more time and money is wasted by engaging in a premature analysis of claims that may never have to be completed.  If no money is ever recovered in this case, then the amounts of the claim of each WARN Claimant is irrelevant to all parties, including the WARN Claimants.  If the currently proposed settlement is approved, the amount of the claim of each WARN Claimant will only be relevant to the WARN Claimants and there will be no need to initiate a claims process for unsecured claims.  If the case is converted and the trustee in chapter

7 makes a recovery of any kind, then the calculations of the amounts of each WARN Claimants'
claims will have to be determined.  That will be part of the job of the chapter 7 trustee if there is
a conversion of these Chapter 11 Cases.  It makes no practical sense to engage in such issues
now when the only rationale for doing so is to determine the outcome of a vote for a chapter 7
trustee when there is not (and may never be) a chapter 7 proceeding.  If there is a conversion to
chapter 7 at some point and the parties wish to squabble over which claimants can vote for a
trustee, there are rules to accomplish doing so, as set forth in section 702 of the Bankruptcy Code
and Bankruptcy Rule 2003(b)(2).  Neither section 702 of the Bankruptcy Code or Bankruptcy
Ryle 2003(b)(2) are applicable in  Chapter 11 proceedings. The WARN Claimants should not be
allowed to ignore Bankruptcy Code provisions and applicable Bankruptcy Rules.

      36.     Moreover, the procedure for determining voting rights in a chapter 7 does not
initially involve the Court.  Upon conversion, an interim trustee is appointed but a creditor has a
right to request a vote to select the identity of a permanent chapter 7 trustee. At or before the 341
meeting, creditors are entitled to alert the U.S. Trustee as to issues regarding the rights of another
creditor to vote.  Among the things that might be raised are whether a creditor has an adverse
interest to the unsecured creditors, or whether there are reasons why a claim might be
disallowed.  In the first instance the U.S. Trustee conducts elections and then sends a report to
the court with the results of the various elections and a recommendation.  The creditors may then
file objections to the report with the Court, which is the ultimate decider on who gets to vote.
Importantly, the determination by the Court as to which claims are allowed to vote is not a
determination on the merits.  If a claim is allowed for voting purposes that does not constitute an
allowance of the claim on the merits; if a claim is disallowed for purposes of voting it may later
be allowed on the merits.  The Motion is an improper attempt by the WARN Claimants to short-

circuit the prescribed process and deprive every other creditor in the case of their safeguards
under the Bankruptcy Code and the Bankruptcy Rules.

### C.  The Claims of Creditors Who Have
### Received Distributions Cannot Be Disallowed

#### 1.  The Transfers Cannot Be Avoided Under Section 549

37.  The inquiry under section 549 properly turns to whether a transfer is "authorized."
Authorization is best understood at the time of the transfer in question, not at the time the
transfer is called into question by section 549.  Mere reversal of a court's order for legal error is
not sufficient to render already completed actions "unauthorized."  An order that is merely
erroneous confers full authority for any and all acts taken prior to a reversal.  *See, e.g., Trook v.
Lafayette Bank & Trust Co.*, 581 N.E.2d 941, 946 n.9 (Ind. App. 1991); *Laird v. Vogel*, 334
So.2d 650, 651 (Fla. Dist. Ct. App. 1976), *cert. denied* 348 So.2d 949 (Fla. 1977).  Here, the
authority to make the payments to the Creditors was authorized pursuant to an effective order of
this Court, and therefore the Creditors are entitled to protection from any attempt to recover the
funds based on section 549 of the Bankruptcy Code.  Accordingly, the transfers in question
cannot be avoided under section 549.

38.  The Committee recognizes that the foregoing interpretation differs from that of
the court in *In re Kmart Corp.*, 2006 Bankr. LEXIS 542 (Bankr. N.D. Ill. Apr. 11, 2006).
However, *Kmart* is not binding upon this Court and further misapprehends the plain meaning of
section 549 of the Bankruptcy Code.  In that case, the court was faced with the Debtors' attempt
to recover payments that had been made to critical vendors under section 549(a).  The vendors
defended by asserting, among other things that the payments were protected by 549(a)(2)(B).
The court in *Kmart* found that the provisions of section 549(a)(2)(B) did not protect the
transaction because even though the payments were made in accordance with a court order, the

time to determine whether the payments were authorized was not the time of the actual payments but at a later time when the court order authorizing the payments had been overturned.  This reading turns section 549(a)(2)(B) on its head and provides no rational rule.  In fact, the decision does not define the time at which the applicability of section 549(a)(2)(B) is determined.  A plain reading would indicate that if the payment were made with the court's authority that it is the transaction that section 549(a)(2)(B) was designed to protect.  The *Kmart* court's decision not to use the date of the transfer is unworkable and not what is intended by the statute.  All one has to do is seek and be granted a stay of the order granting the authority to make postpetition payments and there would be no authority to make the payments.  That is why the date of payment is the only sensible reading.  It satisfies the will of Congress that payments that are approved by the bankruptcy court be protected from recovery as an avoidable post-petition transaction and it protects all parties by offering a remedy to the appealing party to protect its rights.  The *Kmart* court focuses on one word— "is"— but neglects to consider the entirety of section 549(a).  The same exact words should be viewed in the same exact light in the same section of a statute.  *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998) ("similar language contained within the same section of a statute must be accorded a consistent meaning") (citing *Wisc. Dept. of Rev. v. William Wrigley, Jr., Co.*, 505 U.S. 214, 225 (1992)).  Section 549(a) provides that "the trustee may avoid a transfer of property of the estate . . .that occurs after the commencement of the case."  11 U.S.C. § 549(a)(1).  It also provides that "the trustee may avoid a transfer of property of the estate . . . that is not authorized . . . by the court."  11 U.S.C. §549(a)(2)(B).  It is clear that 549(a)(1) looks to the time of the transfer, not any other time.  Therefore section 549(a)(2)(B) must be read to refer to the same time frame.  The words "may avoid a transfer of property of the estate" dictate that the time in question is the time of the

transfer.  The word "is" in section 549(a)(2)(B) does not change this.  The entire section refers to the time of the transfer, and the word "is" refers to the authority for the transfer at the time of the transfer and not at some unspecified later time.

39.     In *Kmart* the court said that the fact that sections 363 and 364 have provisions protecting effective orders under appeal and therefore the absence of such a clause in section 549(a) indicates that no such preservation was intended.  This is contradicted by the fact that 549(a)(2)(B) **is** such a clause and there was no need for redundancy.  Section 549(a)(2)(B) is clear that if authority has been granted, that payments contemplated by the order are protected.  There is no reason to add language saying the same thing twice.  Unlike section 363 and 365, 549(a)(2)(B) in and of itself protects the payment if made pursuant to valid authority and so there is no need to have additional language protecting the rights granted if there is an appeal.  In fact, sections 549(a)(2)(B), 363, and 364 are the only Bankruptcy Code provisions that specifically protect parties that act under court order from having their rights disturbed by the overturning of the order on appeal.[20]

40.     The WARN Claimants also cite to *Delta Petroleum Gen. Recovery Trust v. BWAB, LLC*, 2015 Bankr. LEXIS 1067 (Bankr. D. Del. 2015).  In that case, the court cited *Kmart* for the proposition that section 546(a)(2)(B) provides protection to all transferees under court orders, whether erroneously entered or not, that are not subsequently reversed.  In *Delta* the

---

[20] Moreover, *Kmart* is based on facts that differ from those in this case.  In *Kmart*, by the time of plan confirmation, the order of the bankruptcy court authorizing the payments had already been overturned at the district court level and was on appeal to the Seventh Circuit.  The debtor amended its plan to specifically preserve the right to recover the payments if the appellate process determined that the order authorizing the payments was overturned.  The confirmation order contained the same provisions.  There is no such reservation of rights in any document or order in this case.  The debtor commenced the recovery proceedings immediately after plan confirmation and before the two year limitations period in section 549 had passed.  There was no issue in the case as to whether the two years had run.  In fact, instead of waiting for the Seventh Circuit to rule, Kmart took steps to preserve its rights by filing complaints within the statutory period.  If the Seventh Circuit had agreed that the order authorizing the payment should be upheld, all of the complaints would have had to be dismissed.  The only reason for filing the complaints before the Seventh Circuit ruled was to beat the limitations period.  This is different than in this case where the WARN Claimants took no action to preserve the recovery actions.  In this case, exactly the opposite happened.  As the limitations period expired, the WARN Claimants did nothing to try to preserve the alleged claims.

court took a strong position in favor of the Congressional intent of the statute.  There, the payments were authorized and in the same order as the right to challenge the payments was specifically preserved.  The court held that the right to contest the validity of the payments does not un-authorize those payments and accordingly would not allow a recovery since the payments were allowed by court order.  This strong statement of the law is clearly at odds with the *Kmart* court's overall view of 549.  Even though the decisions led to opposite results, the court in *Delta* cited *Kmart* to further establish that if an order is entered authorizing the payments then the terms of 549(a)(2)(B) are satisfied.  Again, this case did not deal with any appeal and therefore the language in the description of the *Kmart* holding concerning appeals is superfluous; it just happened to be part of the same sentence in *Kmart* but it had nothing to do with the holding in *Delta*.[21]

### 2. The Time to Bring An Action Under Section 549 of the Bankruptcy Code Has Expired, and Thus the Claims Cannot Be Avoided Under Section 502

41.     Section 549(d) of the Bankruptcy Code provides:

(d)  An action or proceeding under this section may not be commenced after the earlier of—

(1) two years after the date of the transfer sought to be avoided; or
(2) the time the case is closed or dismissed.

---

[21] The only other case citing to *Kmart* for these points is *Eggmann v. Parker-Hannifin Corp.* (*In re PJM Enters. of Marion*), 2010 Bankr. LEXIS 28 (Bankr. S.D. Ill. Jan. 12, 2010).  There, the court cited *Kmart* for the proposition that "a post-petition transfer authorized by the Court, even if authorized erroneously, cannot be avoided unless the order authorizing the payment was stayed pending appeal."  *Eggmann*, 2010 Bankr. LEXIS at *8.  However, this case dealt with critical vendor payments that were authorized by the court in an order authorizing the use of cash collateral.  The payments were included in the budget.  This is exactly the opposite of what the court in *Kmart* did in rejecting the very same argument.  Further, *Eggmann* did not deal with appeals, which is the issue in controversy in this case.  The *Eggmann* court's reliance on *Kmart* was only on the point that if there is authority from the court for the payment, the post-petition payment cannot be recovered.  Therefore, the words dealing with an appeal are superfluous because that issue was not before the court.  It should also be noted that the description of the *Kmart* holding was that a transfer cannot be avoided unless the order authorizing the payment was stayed upon appeal.  That is different from what *Kmart* actually said about appeals, which certainly precludes any inference that *Eggmann* is any support at all for the proposition not before it, that the protection does not extend to the payments if the authorization is overturned on appeal.  In fact, the court expressed the contrary view in saying that an overturned order granting authority for payments does not protect payments under 549(a)(2)(B) only if there was a stay pending appeal.  That is the better rule and the court might well have so determined if the issue were actually before it.

11 U.S.C. §549(d).

42.     The Original Settlement Agreement was consummated in August 2013, at which point the Creditors received monies as provided for under the Original Settlement Agreement (the "Transfers").  Accordingly, the two-year period during which a section 549 action could have been brought with respect to the Transfers ended in August 2015—nearly three years ago. By its plain terms, therefore, any action seeking to avoid the Transfers is time-barred.

43.     The WARN Claimants incorrectly claim that the law is "settled that even if the time to bring a section 549 avoidance action has expired, the estate may still assert section 502(d)."  Motion, at ¶ 22.  Indeed, several courts have squarely held that if the time to bring an avoidance action has expired, section 502(d) of the Bankruptcy Code cannot be used to disallow a claim.  See, e.g., *Barkley v. West* (*In re West*), 474 B.R. 191, 201-03 (Bankr. N.D. Miss. 2012) ("The defendants' motion to dismiss is not deflected by § 502(d) when the trustee's causes of action are time barred and the defendants can not be adjudicated to have liability to the estate."); *GMAC Mortg. LLC v. Blitz Holdings Corp.* (*In re IFS Fin. Corp.*), 2008 Bankr. LEXIS 4353, at *11-16 (Bankr. S.D. Tex. Oct. 2, 2008); *In re Marketing Assoc. of Am., Inc.*, 122 B.R. 367, 369 (Bankr. E.D. Mo. 1991).

44.     Moreover, other cases have held that "[a]pplication of §502(d) is not triggered until the trustee successfully prosecutes an avoidance action."  *Springel v. Prosser* (*In re Prosser*), 2011 Bankr. LEXIS 411, at *235 (Bankr. D. V.I. Feb. 9, 2011) (Fitzgerald, J.) (citing *Marketing Res. Int'l Corp. v. PTC Corp.*, 35 B.R. 353, 356 (Bankr. E.D. Pa. 1984)); *see also Holloway v. IRS* (*In re Odom Antennas, Inc.*), 340 F.3d 705, 708 (8th Cir. 2003) ("This language indicates section 502(d) should be used to disallow a claim after the entity is first adjudged liable; otherwise, the court could not determine if the exception applies.") (emphasis added);

*Seta Corp. v. Atlantic Computer Sys.* (*In re Atlantic Computer Sys.*), 173 B.R. 858, 862

(S.D.N.Y. 1994); *Cohen v. Tic Fin. Sys.* (*In re Ampace Corp.*), 279 B.R. 145, 163 (Bankr. D.

Del. 2002) ("[I]n the instant action, there is not yet a judicial order requiring the turnover of

property.  As such, § 502(d) has not yet become operative. . .") (citing cases).  The reason for

this rule is simple—section 502(d) of the Bankruptcy Code is designed to ensure compliance

with judicial orders to turn over property of a bankruptcy estate.  *Ampace*, 279 B.R. at 163.

Where, as here, there is no judicial order requiring turnover of property, section 502(d) is

inoperative.  *See also In re Davis*, 889 F.2d 658, 662 (5th Cir. 1989) ("[Section 502(d)] is

designed to be triggered after a creditor has been afforded a reasonable time in which to turn

over amounts adjudicated to belong to the bankruptcy estate.").  If there is no judicial

determination that amounts are due, then there cannot be a reasonable time frame for returning a

transfer of a yet undetermined portion of a transfer.

45.      Here, no avoidance action has been successfully prosecuted (or even commenced)

against the Creditors.  Indeed, the WARN Claimants themselves could not even bring such an

action.  *See In re Summit Metals, Inc.*, 477 B.R. 484, 502 (Bankr. D. Del. 2012) ("Absent

authorization by the bankruptcy court, the Trustee is the only party who can assert a claim for

damages on behalf of the bankruptcy estate.") (citations omitted); *see also Sebastian v. Schmitz*

(*In re WorldSpace, Inc.*), 2016 U.S. Dist. LEXIS 129497, at *29 (D. Del. Sep. 22, 2016)

(enumerating factors necessary for a creditor to show in order to be granted derivative standing).

To penalize the Creditors by disallowing their Claims before any judicial determination has been

made that such Creditors were the recipients of avoidable transfers is fundamentally inequitable

and contrary to the plain language of the Bankruptcy Code.  Accordingly, the Court should not

disallow the Claims.

### 3. *The Doctrine of Equitable Tolling is Not Applicable Under the Facts of this Case*

46.     Under federal jurisprudence, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations omitted).

47.     These elements were further refined in *Menominee Indian Tribe v. United States*, 136 S.Ct. 750 (2016).  In *Menominee*, the Supreme Court reaffirmed that the second prong of the *Holland* test could only be met if "the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee*, 136 S.Ct. at 756 (emphasis in original). There is nothing extraordinary about an appeal.  Something that is common cannot also be extraordinary.  Further, there are rights provided under federal law to seek the preservation of rights pending appeal.  Chief among them is the right to seek a stay pending appeal in the bankruptcy court and, if unsuccessful, the district court.  The WARN Claimants never sought a stay in the district court.  They cannot be heard now to complain on equitable principles that a clear limitations provision should be tolled. They even directly argued to the bankruptcy court that recovery rights would probably be lost without a stay.  The WARN Claimants were therefore well aware of the two year limitation period and that payments would be made in accordance with this Court's order if there were no stay. Further, when considering the equities, the clear balance is on the side of the Creditors.  They received a very small payment on account of their claims.  They almost certainly spent the money years ago and had every right to rely on a very clear pronouncement of a limitations period right in section 549(d) of the Bankruptcy Code. Now, without standing and in violation of numerous rules designed to protect claimants' rights the WARN Claimants raise these issues.  For almost all creditors, defending this action will

entail more in cost than they received from the small dividend that was paid.   The Supreme

Court's tests have not been met.   An appeal is not an extraordinary circumstance and seeking a

stay in the district court was not beyond the control of the WARN Claimants.   In fact, in looking

at the balance of equities, the result is so lopsided in favor of the unsecured creditors that the

equitable doctrine of laches should be applied.   This Motion was filed five years after the

Transfers (not two as required by the statute) and almost three years after the clear limitations

period had expired.   There was no request by the Debtors to bring the actions before the

limitations period expired.   There was no motion for a trustee or the appointment of an examiner

to bring the actions timely.   There was no motion to this Court for the WARN Claimants to bring

the actions timely.   A motion for stay could have been brought based on the fact that the

limitations period was about to expire.   There were many possible avenues the WARN Claimants

could have taken, but took none of them to potentially preserve the actions.

### D.   Even if the Motion Were Granted, The WARN Claimants Would Be Unable to Obtain the Relief They Actually Seek—To Unilaterally Choose a Chapter 7 Trustee

#### 1.   It is Inappropriate to Object to Claims for the Purpose of Voting on a Chapter 7 Trustee Before a Proceeding is Converted

48.     The procedure for the election of a chapter 7 trustee is well-established.   A

chapter 7 trustee election occurs at a meeting of creditors.   11 U.S.C. § 702(b).   Such a meeting

is presided over by the United States Trustee.   11 U.S.C. § 341(a); Fed R. Bankr. P. 2003.   If

there is a dispute as to whether a certain creditor is entitled to vote for a chapter 7 trustee under

section 702(a) of the Bankruptcy Code, such a dispute is brought to the attention of the United

States Trustee in the first instance.   *See, e.g., In re Barkany*, 542 B.R. 662, 692-93 (Bankr.

E.D.N.Y. 2015) (holding that, in general, "courts do not consider post-election objections that

were not raised at the time the trustee election was held"); *In re Lake States Commodities, Inc.*,

173 B.R. 642, 647-48 (Bankr. N.D. Ill. 1994).   If there is an eligibility dispute, the United States

Trustee presides over the election, and tabulates the votes for each alternative election necessary because of the dispute.  6 COLLIER ON BANKRUPTCY ¶ 702.03[4][b] (16th ed. 2017).  "Once reported to the court, if a motion is made for resolution of the dispute under Bankruptcy Rule 2003(d)(2), the court will then determine the issue." *Id.*  Even if the court determines that a creditor might or might not be entitled to vote at a chapter 7 trustee election, this is not a determination on the merits; a claim that is not allowed to vote at such an election may turn out to be an allowed claim on its merits.  Likewise, a creditor being allowed to vote does not constitute an allowance of that creditor's claim on its merits.  The import of these procedures is that a fight over who can vote for a chapter 7 trustee properly occurs in a chapter 7 (and not a chapter 11) case, and more specifically at a section 341 meeting in the first instance.  Section 702(b) of the Bankruptcy Code and Bankruptcy Rule 2003 are not even applicable during a chapter 11 proceeding.

### 2.   *The WARN Claimants Hold an Adverse Interest and Would Not be Able to Vote on a Chapter 7 Trustee Even if an Election Occurs*

49.   The Bankruptcy Code enumerates the circumstances under which a creditor may vote in the election of a chapter 7 trustee:

(a)  A creditor may vote for a candidate for trustee only if such creditor--

(1)  holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

(2)  does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

11 U.S.C. § 702(a).  Of particular issue under the instant circumstances is whether the WARN

Claimants have an "interest materially adverse" to the general unsecured creditor body.[22]  Here,

they certainly do.

50.     The adversity between the WARN Claimants and the general unsecured creditor

body has been apparent since the beginning of these Bankruptcy Cases; indeed, the filing of the

Motion—seeking to disallow **<u>every</u>** general unsecured claim not belonging to the WARN

Claimants—underscores this very adversity.  This adversarial relationship even made its way to

the Supreme Court of the United States.

51.     In passing, the WARN Claimants posit that they would be able to vote in a

chapter 7 trustee election, citing to *In re TBR USA, Inc.*, 429 B.R. 599 (Bankr. N.D. Ind. 2010).

The WARN Claimants' reliance on *TBR USA* is misplaced, and their position that they would be

permitted to vote is incorrect.  In that case, which is not binding in the Third Circuit, the court

stated that "the mere assertion of a priority claim by a creditor does not *ipso facto* disqualify a

creditor from voting pursuant to 11 U.S.C. § 702(a)(1)/11 U.S.C. § 702(a)(2)."  *TBR USA*, 429

B.R. at 618 (internal punctuation omitted).[23]  *TBR* does not say that a priority creditor is allowed

to vote even if it holds a materially adverse interest.

52.     The fact that the WARN Claimants have an "interest materially adverse" to

general unsecured creditors as a whole could not be more apparent.  First, the WARN Claimants

do wear two hats, one as a priority unsecured claimant and one as a general unsecured claimant.

However, their primary hat is that of a priority claimant; less than a quarter of the WARN

---

[22] For the avoidance of doubt, the Committee expressly preserves the right to argue that the WARN Claimants may not be permitted to vote in the election of a chapter 7 trustee on any grounds, including but not limited to those enumerated in 11 U.S.C. § 702(a)(1).

[23] *TBR USA* concerned, in part, whether a secured creditor *per se* holds a material adverse interest to unsecured creditors where they are undersecured and thus have both a secured and unsecured claim.  The court found that no *per se* rule existed, but ultimately found certain undersecured claimants to have material adverse interests such that they could not vote for a trustee on other grounds.

Claimants' asserted aggregate claim is a general unsecured claim.[24]  Moreover, the WARN

Claimants' aggregate asserted general unsecured claim is merely 14.77% of the total amount of

general unsecured claims.  By contrast, nearly a third of the total—priority and non-priority—

asserted unsecured claims pool consists of the WARN Claimants' priority claims.[25]

Accordingly, the interests of the WARN Claimants on the one hand and general unsecured

creditors on the other are in direct conflict.

53.    To be sure, it would be inappropriate for the Court to issue an opinion at this time

declaring whether or not the WARN Claimants could vote in an election of a hypothetical future

chapter 7 trustee.  However, given the fact that the Motion is a transparent attempt for the

WARN Claimants to unilaterally decide the election of a chapter 7 trustee, should these

Bankruptcy Cases be converted to chapter 7, it is important for the Court to consider the

underlying motivations for the Motion being brought at this time in determining that the WARN

Claimants have a materially adverse interest and should not be allowed to vote.

**E.  <u>The WARN Claimants' Claims Should Not Be Allowed</u>**

54.    In addition to seeking the disallowance of every other unsecured claim, the

WARN Claimants also seek allowance of their claims.  No WARN Claimants have filed proofs

of claim, and if this case were to be converted to chapter 7, a claim or other writing would first

have to be filed in order for the WARN Claimants to be permitted to vote for a chapter 7 trustee.

Fed. R. Bankr. P. 2003(b)(3).

55.    Furthermore, there are no assets currently available for distribution and the claims

belonging to the WARN Claimants are complicated.  If these Chapter 11 Cases were to be

---

[24] The WARN Claimants assert that they hold a general unsecured claim in the amount of $3,689,917.13 and a priority unsecured claim in the amount of $11,438,126.12, meaning that the WARN Claimants' aggregate general unsecured claim is approximately 24.32% of their aggregate asserted claim.

[25] The WARN Claimants assert that they hold an aggregate priority claim in the amount of $11,438,126.12, which is approximately 31.16% of the aggregate asserted unsecured claims pool of $36,709,861.13.

converted to chapter 7, the chapter 7 trustee should have the opportunity to review all claims filed.  The simplistic schedule attached to the Motion does not contain all information relevant to making a determination as to the rightful amount of each claim, and certainly not the amount entitled to priority.  For instance, the chart indicates a rate of pay, but not the number of hours allegedly worked.  The NJ WARN Act also requires that a calculation be made at the "regular" rate of compensation, but there is no indication that the numbers indicated are at the "regular" rate.  There is also no disclosure as to how the "regular" rate was determined.  The statute requires an analysis of the average regular rate of compensation for the last three years or the final regular rate of compensation, and directs that the higher of the two numbers be used to calculate severance.  The Motion also includes an add-on of 25% for benefits and states that this is required by the statute.  The statute itself requires no such specific addition.  Further, the WARN Claimants do not disclose any post-petition payments that would reduce the WARN liability.  In other words, the WARN Claimants have not included all information necessary for the Court to make a determination as to the proper amounts of their claims and if this case is converted to an actual chapter 7, the chapter 7 trustee should have the opportunity to evaluate the WARN Claimants' individual claims.  Indeed, at least significant negotiations, and probably substantive discovery, would be warranted before the WARN Claimants' claims are ready to be allowed.  At this point there is no reason to determine the amount and priority of the WARN Claimants claims because there is no money in the estate to satisfy them.

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, the Committee respectfully requests that the Court deny or dismiss the Motion.

Dated:    March 8, 2018                    PACHULSKI STANG ZIEHL & JONES LLP

                                          */s/ Peter J. Keane*
                                          Robert J. Feinstein (NY Bar No. 1767805)
                                          Richard E. Mikels (NY Bar No. 5382320)
                                          Peter J. Keane (DE Bar No. 5503)
                                          Steven W. Golden (NY Bar No. 5374152)
                                          919 North Market Street, 17th Floor
                                          Wilmington, DE  19899
                                          Telephone: 302-652-4100
                                          Facsimile:  302-652-4400
                                          E-mail:  rfeinstein@pszjlaw.com
                                                     rmikels@pszjlaw.com
                                                     pkeane@pszjlaw.com
                                                     sgolden@pszjlaw.com

                                          *Counsel for the Official Committee of Unsecured*
                                          *Creditors*