**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>JEVIC HOLDING CORP., *et al.*, [1]<br><br>Debtors. | Chapter 7<br><br>Case No. 08-11006 (BLS)<br>(Jointly Administered) |
| THE CIT GROUP/BUSINESS CREDIT, INC., as agent for itself and the Lender Group,<br><br>Plaintiff,<br><br>v.<br><br>JEVIC HOLDING CORP.; JEVIC TRANSPORTATION, INC.; CREEK ROAD PROPERTIES, LLC; GEORGE L. MILLER, solely in his capacity as Chapter 7 Trustee of the bankruptcy estates of Jevic Holding Corp., *et al.*; THE GOODYEAR TIRE & RUBBER CO.; ACTION CALENDAR & SPECIALTY CO., INC.; IRVING OIL CORPORATION; HARTFORD FIRE INSURANCE COMPANY; THE ILLUMINATING COMPANY; PITNEY BOWES GLOBAL FINANCIAL SERVICES, LLC; WILLIAMS SCOTSMAN, INC.; SUNGARD AVAILABILITY SERVICES LP; PACHULSKI STANG ZIEHL & JONES LLP; MORRIS ANDERSON & ASSOCIATES; and KLEHR, HARRISION, HARVEY, BRANZBURG & ELLERS LLP,<br><br>Defendants. | Adv. Pro. No. _____ |

**COMPLAINT FOR (I) DECLARATORY RELIEF AND (II) RESTITUTION OF**
**CERTAIN FUNDS DISTRIBUTED UNDER VACATED APPROVAL ORDER**

The CIT Group/Business Credit, Inc. ("CIT"), as agent for itself and BMO Harris Bank

N.A., Bank of America, N.A., PNC Bank, National Association, and Wells Fargo Capital

---

[1] The Debtors in this Chapter 11 case, along with the last four digits of the Debtors' federal tax identification numbers are: Jevic Holding Corp. (8738); Creek Road Properties, LLC (9874); and Jevic Transportation, Inc. (3402).

Finance (together with CIT in its capacity as lender, the "Lender Group"), by and through its undersigned counsel, Reed Smith LLP, files this Complaint for (i) Declaratory Relief and (ii) Restitution of Certain Funds Distributed Under Vacated Approval Order.

## JURISDICTION, VENUE AND NATURE OF MATTER

1.     This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     Each of the claims set forth in this adversary proceeding (the "Adversary Proceeding") is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

4.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), CIT consents to the entry of a final judgment or order by the Bankruptcy Court.

## THE PARTIES

5.     CIT is a New York corporation with a place of business at 11 West 42nd Street in New York, New York.  CIT is the plaintiff in this Adversary Proceeding.

6.     Defendant Jevic Transportation, Inc. ("Jevic Transportation") is a corporation organized under the laws of the state of New Jersey.

7.     Defendant Jevic Holding Corp. ("Jevic Holding") is a corporation organized under the laws of the state of Delaware.

8.     Defendant Creek Road Properties, LLC ("Creek Road" and together with Jevic Transportation and Jevic Holding, the "Debtors") is a limited liability company organized under the laws of the state of Ohio.

9.      The Debtors' chapter 7 bankruptcy cases are jointly administered under Case #08-11006 (Jointly Administered).

10.     Defendant George L. Miller (the "Trustee") is the chapter 7 trustee of the Debtors' bankruptcy estates.

11.     Defendant Goodyear Tire & Rubber Co. ("Goodyear") is a corporation organized under the laws of the state of Ohio with, upon information and belief, its principal place of business located in Akron, Ohio.

12.     Defendant Action Calendar & Specialty Co., Inc. ("Action") is a corporation organized under the laws of the state of New Jersey with, upon information and belief, its principal place of business located in Delran, New Jersey.

13.     Defendant Irving Oil Corporation ("Irving Oil"), now known as Highlands Fuel Delivery, LLC, is a limited liability company organized under the laws of the state of Maine with, upon information and belief, its principal place of business located in Portsmouth, New Hampshire.

14.     Defendant Hartford Fire Insurance Company ("Hartford") is a company organized under the laws of the state of Connecticut with, upon information and belief, its principal place of business located in Hartford, Connecticut.

15.     Defendant Illuminating Company ("Illuminating") is a company organized under the laws of the state of Ohio with, upon information and belief, its principal place of business located in Cleveland, Ohio.

16.     Defendant Pitney Bowes Global Financial Services, LLC ("Pitney Bowes") is a limited liability company organized under the laws of the state of Delaware with, upon information and belief, its principal place of business located in Shelton, Connecticut.

17.    Defendant William Scotsman, Inc. ("Scotsman") is a corporation organized under the laws of the state of Delaware with, upon information and belief, its principal place of business located in Baltimore, Maryland.

18.    Defendant Sungard Availability Services LP ("Sungard") is a limited partnership organized under the laws of the state of Pennsylvania with, upon information and belief, its principal place of business located in Wayne, Pennsylvania.

19.    Defendant Pachulski Stang Ziehl & Jones LLP ("PSZ&J") is a limited liability partnership organized under the laws of the state of California with, upon information and belief, its principal place of business located in Los Angeles, California.

20.    Defendant Morris Anderson & Associates ("Morris Anderson") is a corporation organized under the laws of the state of Illinois with, upon information and belief, its principal place of business located in Chicago, Illinois.

21.    Defendant Klehr Harrison Harvey Branzburg LLP ("KHHB" and together with PSZ&J and Morris Anderson, the "Estate Professionals") is a limited liability partnership organized under the laws of the state of Pennsylvania with, upon information and belief, its principal place of business located in Philadelphia, Pennsylvania.

## BACKGROUND

22.    On May 20, 2008 (the "Petition Date"), the Debtors commenced their respective bankruptcy cases by filing voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code").

23.    Prior to the Petition Date, the Debtors operated a hybrid less-than-truckload and truckload carrier that provided regional and inter-regional time definite delivery across the United States and parts of Canada.

24.     The Debtors began operations in 1981, had an initial public offering in 1997, and were acquired by Yellow Corporation in 1999.  In 2002, the *Jevic* business was spun off to form SCS Transportation.  In June 2006, Sun Transportation, LLC ("STL"), which is owned by Sun Capital Partners, IV, acquired the Debtors.

25.     As of the Petition Date, the Debtors were borrowers under a secured credit agreement (the "Prepetition Facility") dated as of July 28, 2006, with CIT, as agent, and the other lenders in the Lender Group.

26.     After the Petition Date, all of the Debtors' tangible assets were liquidated, and the proceeds were used to repay the outstanding obligations owed under the Prepetition Facility, which had been "rolled up" into the DIP financing facility.  *See Final Order (i) Authorizing Debtors-in-Possession to Obtain Senior Debtor in Possession Financing; (ii) Granting Liens, Security Interest, and Super Priority Status; (iii) Authorizing Use of Cash Collateral; and (iv) Affording Adequate Protection to Prepetition Lenders entered on June 20, 2008* [Docket No. 118] (the "Final DIP Financing Order").

**A.      Committee Adversary Proceeding Against CIT and Sun**

27.     Pursuant to the Final DIP Financing Order, on December 31, 2008, the Official Committee of Unsecured Creditors (the "Committee") commenced an adversary proceeding by filing a complaint against CIT.  *See* Adv. Pro. No. 08-51903(BLS) (the "Committee Adversary Proceeding").

28.     In the Committee Adversary Proceeding, the Committee alleged claims against CIT relating to Sun's acquisition of the Debtors pursuant to a "leveraged buyout."

29.     On June 30, 2010, the Committee amended the complaint to join Sun Capital

Partners IV, LP, Sun Capital Partners Management IV, LLC, and Sun Capital Partners, Inc.

(collectively, "Sun") as defendants and to assert claims against such entities.

30.     On September 15, 2011, the Bankruptcy Court granted in part and denied in part a

motion to dismiss the Committee Adversary Proceeding.  *See* Opinion at Docket No. 40, Adv.

Pro. No. 08-51903(BLS) (hereafter referred to as the "Dismissal Opinion").

31.     After entry of the Dismissal Order, on October 7, 2011, the Committee filed a

second amended complaint against CIT and Sun.

**B.      The Settlement Agreement and Bankruptcy Court Approval**

32.     Subject to Bankruptcy Court approval, the Debtors, the Committee, Sun, and CIT

entered into a Settlement Agreement and Release dated as of June 22, 2012 (the "Settlement

Agreement").

33.     On December 4, 2012, over the objection of certain former employees of the

Debtors (the "WARN Plaintiffs"),[2] the Bankruptcy Court entered an *Order Granting Joint*

*Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for*

*Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing*

---

[2] The WARN Plaintiffs objected to the Settlement Agreement by filing, on July 25, 2012, the
*Memorandum of Law in Opposition to the Joint Motion of the Debtors, CIT, Sun Capital, and the Official*
*Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b) and Fed. R. Bankr.*
*P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II)*
*Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief*
[Docket No. 1396], and, on November 7, 2012, the *Objection In Opposition to the Supplement to (1) Joint*
*Motion of Debtors, CIT, Sun Capital, and Official Committee of Unsecured Creditors for Entry of Order*
*(I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing Debtors' Cases Upon*
*Implementation of Settlement; and (III) Granting Related Relief; and (2) Debtors' Motion for Entry of*
*Order (A) Authorizing Extension of Use of Cash Collateral, and (B) Granting Adequate Protection* [D.I.
1479].

*the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (the

"Approval Order") [D.I. 1520].[3]

34.     A true and correct copy of the Approval Order is attached as **Exhibit A.**

35.     The Approval Order authorized the Debtors' entry into the Settlement Agreement.

*See* Approval Order ¶ 2.

36.     The Approval Order provided, in part, as follows:

Within ten (10) business days after the Effective Date . . . of the Settlement Agreement (the "Effective Date"), the following shall occur simultaneously:

(a) CIT shall pay to the Debtors $2,000,000 (the "Administrative Claim Fund");

(b) The Committee, CIT and Sun shall file with the Court a fully executed stipulation of dismissal with prejudice, substantially in the form of Exhibit 2 to the Settlement Agreement;

(c) The releases set forth in paragraph 2(c) of the Settlement Agreement shall become effective upon payment of the Administrative Claim Fund to the Debtors; and

(d) The Estate Releasing Parties, as such term is defined in the Settlement Agreement, shall execute and deliver to CIT releases in favor of the other members of the Lender Group, as such term is defined in the Settlement Agreement, in the form attached as Exhibit 3 to the Settlement Agreement, and such releases shall be effective upon payment of the Administrative Claim Fund to the Debtors.

*See* Approval Order ¶ 4(a)-(d).

37.     None of the Defendants in this Adversary Proceeding would have been paid but

for the Administrative Claim Fund funded by CIT pursuant to the Settlement Agreement because

the Debtors had no funds to pay their administrative claims. *See Joint Motion for Entry of an*

---

[3] Capitalized terms used and not defined in this Complaint shall have the meanings ascribed to such terms in the Approval Order.

*Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors'
Case upon Implementation of Settlement; and (III) Granted Related Relief* (the "Settlement
Motion") [D.I. 1346] ¶ 13 ("there are no available assets to pay outstanding administrative,
priority or general unsecured claims at this time").

38.     A true and correct copy of the Settlement Motion is attached as **Exhibit B**.

39.     The Approval Order provided for the payment of Estate Professionals and other
holders of allowed administrative claims using the Administrative Claim Fund.  *See* Approval
Order ¶¶ 8-10.

40.     The Approval Order provided that, "[u]pon payment of the Administrative Claim
Fund to the Debtors, the Debtors shall pay the aggregate sum of $200,000 from the
Administrative Claim Fund to the professionals retained by the Committee on account of
previously approved and unpaid fees and expenses."  *See* Approval Order ¶ 8.

41.     Moreover, Exhibit A to the Certification (defined below) listed certain
administrative tax and 11 U.S.C. § 503(b)(9) claims totaling $328,281.65 to be paid with the
Administrative Claim Fund.  Of that total, this Complaint seeks $231,604.73 from the named
Defendants.

42.     As the Administrative Claim Fund was to be used to pay all "unpaid professional
fees, as well as all allowed 503(b)(9) Claims and Admin taxes," Settlement Motion ¶ 15, the
balance of the Administrative Fund was to be used only to pay the administrative claims of
professionals (including the Estate Professionals) for previously awarded attorneys' fees and
expenses.

43.     Upon payment in full of the allowed administrative claims, the Debtors and the Committee were required to file with the Bankruptcy Court a certification that administrative claims had been paid in full.  *See* Approval Order ¶ 11; Settlement Motion, Exh. C.

**C.     Denial of Stay Pending Appeal and Consummation of the Settlement Agreement**

44.     On December 18, 2012, the WARN Plaintiffs filed an appeal of the Approval Order to the United States District Court for the District of Delaware (the "District Court").  The WARN Plaintiffs also sought, in the Bankruptcy Court, a stay of the Approval Order pending resolution of the appeal.  The Bankruptcy Court denied the WARN Plaintiffs' request for a stay pending appeal.  The WARN Plaintiffs did not request a stay pending appeal from the District Court.

45.     After the denial of the WARN Plaintiffs' request for a stay, CIT paid the Administrative Claim Fund to the Debtors' estates, and the Administrative Claim Fund was distributed to administrative claimants.

46.     On October 11, 2013, pursuant to paragraph 11 of the Approval Order, the Debtors and the Committee filed the *Certification of Counsel Regarding Satisfaction of Conditions in Order Approving Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Section 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (the "Certification") [D.I. 1741].

47.     A true and correct copy of the Certification is attached as **Exhibit C**.

48.     Pursuant to Exhibit A to the Certification, certain of the Defendants received the following payments:

a.    Defendant Goodyear received $41,115.33 on account of its administrative claim under 11 U.S.C. § 503(b)(9) claim (Claim No. 446);

b.    Defendant Action received $6,818.30 on account of its § 503(b)(9) claim (Claim No. 211);

c.    Defendant Irving Oil received $126,803.09 on account of its § 503(b)(9) claim (Claim No. 234);

d.    Defendant Hartford received $8,562.61 on account of its administrative claim (Claim No. 237);

e.    Defendant Illuminating received $7,251.92 on account of is administrative claim (Claim No. 468);

f.    Defendant Pitney Bowes received $3,393.25 on account of its administrative claim (Claim No. 1146);

g.    Defendant Scotsman received $804.23 on account of its administrative claim (Claim No. 1225); and

h.    Defendant Sungard received $36,856.00 on account of its administrative claim (Claim No. 34)

49.    Some or all of the $1,471,718.35 difference between the $2,000,000 paid to establish the Administrative Fund and the $528,281.65 specifically identified to be paid pursuant to the Approval Order and Exhibit A to the Certification was distributed to, *inter alia*, Estate Professionals in payment of their previously awarded chapter 11 administrative claims.  *See* Settlement Motion ¶ 15 (Administrative Claim Fund was to be used to pay all "unpaid professional fees, as well as all allowed 503(b)(9) Claims and Admin taxes").

50.    The specific amounts of the Administrative Fund distributed to each Estate Professional were not listed in the Debtors' monthly operating reports.

51.    On September 9, 2014, the Bankruptcy Court closed the Debtors' bankruptcy cases.

**D.    Initial Affirmances on Appeal and then Ultimate Vacatur of the Approval Order**

52.    On appeal, the District Court affirmed the Approval Order.  *See Czyzewski v. Jevic Holding Corp. (In re Jevic Holding Corp.)*, 2014 WL 268613 (D. Del. Jan. 24, 2014).

53.    The WARN Plaintiffs appealed to the United States Court of Appeals for the Third Circuit (the "Third Circuit"), which affirmed the decision of the District Court in 2015. *See Official Comm. of Unsecured Creditors v. CIT Grp. Bus. Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173 (3d Cir. 2015).

54.    In 2016, the Supreme Court of the United States (the "Supreme Court") granted *certiorari* to hear the WARN Plaintiffs' appeal.  *See Czyzewski v. Jevic Holding Corp.*, 136 S. Ct. 2541 (2016).  On March 22, 2017, the Supreme Court issued an opinion (7-2) and order reversing the Third Circuit's decision and remanding the case to the Third Circuit for further proceedings.  *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 987 (2017) ("The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.").

55.    On May 9, 2017, the Third Circuit vacated its 2015 opinion and remanded the case to the District Court.  *See Official Comm. of Unsecured Creditors v. CIT Group/Bus. Credit Inc. (In re Jevic Holding Corp.)*, 688 Fed. Appx. 166 (3d Cir. 2017).

56.    On May 12, 2017, the District Court issued an order vacating the Approval Order and remanding the case to the Bankruptcy Court for further proceedings.

57.    On May 17, 2017, the Bankruptcy Court reopened Jevic Holding's bankruptcy case and converted it to Chapter 7.  On October 10, 2018, the Court reopened the remaining Debtors' bankruptcy cases and converted them to Chapter 7.

## COUNT I

### (Declaratory Relief Against All Defendants)

58.     CIT incorporates by reference the allegations set forth in paragraphs 1 through 57 above.

59.     As the Approval Order has been vacated, there was (and is) no authority for the Debtors to enter into, or consummate, the Settlement Agreement.

60.     As the Approval Order has been vacated, CIT had (and has) no obligation to fund the Administrative Fund.

61.     As the Approval Order has been vacated, the Debtors had (and have) no interest in the Administrative Fund or the funds that were distributed therefrom to the Defendants.

62.     As the Approval Order has been vacated, the Administrative Fund was (and is) not property of the Debtors' estates.

63.     As the Approval Order has been vacated, there effectively was (and is) no basis upon which to distribute the Administrative Fund to the Defendants.

64.     As the Approval Order has been vacated, the Defendants had (and have) no right to receive or retain any distribution from the Administrative Fund.

65.     As the Approval Order has been vacated, CIT is the only entity with an interest in, or right to, the funds disbursed from the Administrative Fund.

66.     As the Approval Order has been vacated, to the extent any other entity has an interest in, or right, to receive or retain the funds disbursed from the Administrative Fund, CIT's right to, and interest in, the funds disbursed from the Administrative Fund is superior to such other entity's right to, and interest in, such funds.

67.     Upon reversal or vacatur of the Approval Order, CIT, as a party that relied upon the Approval Order in funding the Administrative Fund, has the right to be put back as nearly as

may be possible in the economic position CIT would have occupied had the Approval Order not been rendered.

68.     Moreover, failing to restore the $2,000,000 paid by CIT, on behalf of itself and the Lender Group, would be inequitable because CIT would have paid such amount to the Debtors without receiving the releases that were to be provided to CIT (and the Lender Group) in exchange for such payment.

69.     Failing to restore the $2,000,000 paid by CIT, on behalf of itself and the Lender Group, would be inequitable because CIT would have paid such amount to the Debtors, for the benefit of administrative claimants, without receiving any consideration in exchange for such payment.

WHEREFORE, CIT seeks a declaratory judgment in favor of CIT and against each of the Defendants providing that (i) CIT is entitled to recover from the Debtors and their estates the $2,000,000 that CIT paid to the Debtors because the Approval Order has been vacated; (ii) CIT is entitled to recover from each other Defendant the funds disbursed from the Administrative Fund to such Defendant because the Approval Order has been vacated; (iii) CIT's rights to recover (a) the $2,000,000 that CIT paid to the Debtors and their estates and (b) the amounts distributed to the other Defendants from the Administrative Fund, due to vacatur of the Approval Order, is superior to any interest in, or right to, such funds that the Debtors, their estates, the Trustee, or any Defendants may have or assert; (iv) CIT is entitled to recover from (a) the Trustee, the Debtors and their estates, any amounts disbursed from the Administrative Fund that the Trustee recovers, whether as a result of litigation, settlement, or otherwise, or (b) any further transferee of such recovered funds; and (v) granting such further relief to CIT as is appropriate.

## COUNT II

### (Restitution Due to Unjust Enrichment - Against All Defendants)

70.    CIT incorporates by reference the allegations set forth in paragraphs 1 through 57 above.

71.    Restitution or disgorgement is an appropriate equitable relief upon setting aside or vacating a settlement agreement.  *See In re Tribune Media Co.*, 799 F.3d 272, 283 (3d Cir. 2015).

72.    CIT, and the Lender Group, conferred a benefit upon the Debtors, their estates, and the other Defendants by funding the Administrative Fund with $2,000,000 in cash to pay administrative claims when the Debtors and their estates had no funds to pay such claims.

73.    A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim to restitution as necessary to avoid unjust enrichment.

74.    As alleged above, some or all of the difference between the $2,000,000 paid to establish the Administrative Fund and the $528,281.65 specifically identified to be paid pursuant to the Settlement Motion and Certification was distributed to, *inter alia*, Estate Professionals in payment of their previously awarded chapter 11 administrative claims.

75.    Each of the Defendants should be required to pay to CIT, for itself and the Lender Group, the actual amounts that such Defendant received from the Administrative Fund.

WHEREFORE, CIT demands judgment (I) awarding restitution in favor of CIT as follows:  (a) against the Debtors, their estates and the Trustee, in the amount of $2,000,000 that CIT paid to the Debtors to fund the Administrative Fund; (b) against each of the other Defendants in the amounts received by such Defendant pursuant to the Approval Order, including from (i) the $528,281.65 specifically identified pursuant to the Approval Order and Exhibit A to the

Certification, and (ii) the balance of $1,471,718.35 that was partly or entirely distributed to Estate

Professionals in payment of their previously awarded chapter 11 administrative claims and

(II) granting such further relief to CIT as is appropriate.

Dated: June 3, 2019                       Respectfully submitted,
       Wilmington, Delaware
                                          REED SMITH LLP

                                   By:   */s/ Kurt F. Gwynne*
                                          Kurt F. Gwynne (No. 3951)
                                          Jason D. Angelo (No. 6009)
                                          1201 Market Street, Suite 1500
                                          Wilmington, Delaware 19801
                                          Telephone: (302) 778-7500
                                          Facsimile: (302) 778-7575
                                          Email: kgwynne@reedsmith.com
                                               jangelo@reedsmith.com

                                          *Counsel for The CIT Group/Business Credit, Inc.,*
                                          *as agent for itself and the Lender Group*