**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>JEVIC HOLDING CORP., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 08-11006 (BLS)<br>(Jointly Administered)<br><br>**Re: Docket No. 1885** |

**LIMITED OBJECTION OF THE CIT GROUP/BUSINESS CREDIT, INC., AS AGENT, TO MOTION OF CHAPTER 7 TRUSTEE, GEORGE L. MILLER, FOR AN ORDER APPROVING SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019**

The CIT Group/Business Credit, Inc. ("CIT"), as agent for itself and BMO Capital Markets Financing, LaSalle Bank Midwest National Association, PNC Bank, N.A., and Wachovia Bank, National Association (together with CIT in its capacity as lender, the "Lender Group"), through its counsel, files this limited objection (the "Objection") to the *Motion of Chapter 7 Trustee, George L. Miller, for an Order Approving Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019* (D.I. 1885) (the "Trustee's Settlement Motion"). In support of its Objection, CIT respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. CIT does not object to the amount of the settlement between General Electric Company ("GEC") and the chapter 7 trustee (the "Trustee"). CIT objects only because the Settlement Payment (as defined below) should be paid to CIT or held by the Trustee subject to CIT's liens and security interests.

[1] The Debtors in these cases, along with the last four digits of the federal tax identification numbers for each of the Debtors, are: Jevic Holding Corp. (8738); Creek Road Properties, LLC (9874); and Jevic Transportation, Inc. (3402).

## BACKGROUND

2. On May 20, 2008 (the "Petition Date"), Jevic Holding Corp. ("Holding"), Creek Road Properties, LLC ("Creek Road"), and Jevic Transportation, Inc. ("Jevic" and, together with Holdings and Creek Road, the "Debtors") commenced their respective bankruptcy cases by filing voluntary petitions for relief under title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

3. As of the Petition Date, the Debtors were borrowers under a secured credit agreement (the "Prepetition Facility") dated as of July 28, 2006, with CIT, as agent for itself and the other lenders in the Lender Group.

4. After the Petition Date, all of the Debtors' tangible assets were liquidated, and the proceeds were used to repay the outstanding obligations owed under the Prepetition Facility, which had been "rolled up" into a post-petition financing facility. *See Final Order (i) Authorizing Debtors-in-Possession to Obtain Senior Debtor in Possession Financing; (ii) Granting Liens, Security Interest, and Super Priority Status; (iii) Authorizing Use of Cash Collateral; and (iv) Affording Adequate Protection to Prepetition Lenders,* entered on June 20, 2008 (D.I. 118).

### A. The Committee's Adversary Proceeding Against CIT and Sun and the Prior Settlement Agreement

5. Pursuant to the Final DIP Financing Order, on December 31, 2008, the Official Committee of Unsecured Creditors (the "Committee") commenced an adversary proceeding by filing a complaint against CIT. *See* Adv. Pro. No. 08-51903(BLS) (the "Committee Adversary Proceeding").

6. On June 30, 2010, the Committee amended the complaint to join Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, and Sun Capital Partners, Inc.

(collectively, "Sun") as defendants and to assert claims against such entities. The Committee later filed a second amended complaint against CIT and Sun.

7. Subject to the Bankruptcy Court's approval, the Debtors, the Committee, Sun, and CIT entered into a Settlement Agreement and Release dated as of June 22, 2012 (the "Prior Settlement Agreement").

8. On December 4, 2012, over the objection of certain former employees of the Debtors (the "WARN Plaintiffs"), this Court entered an *Order Granting Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (the "Approval Order") (D.I. 1520), which approved the Prior Settlement Agreement.

**B. Settlement Closing and Subsequent Vacatur of the Approval Order**

9. On December 18, 2012, the WARN Plaintiffs filed an appeal of the Approval Order to the United States District Court for the District of Delaware (the "District Court"). The WARN Plaintiffs also sought, in the Bankruptcy Court, a stay of the Approval Order pending resolution of the appeal. The Bankruptcy Court denied the WARN Plaintiffs' request for a stay pending appeal. The WARN Plaintiffs did not request a stay pending appeal from the District Court.

10. After the denial of the WARN Plaintiffs' request for a stay, pursuant to the Approval Order and the Prior Settlement Agreement, CIT paid $2.0 million to the estate and released its first-priority lien on approximately $1.7 million in funds then remaining in the estate.

11. On October 11, 2013, pursuant to paragraph 11 of the Approval Order, the Debtors and the Committee filed the *Certification of Counsel Regarding Satisfaction of*

*Conditions in Order Approving Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Section 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases Upon Implementation of Settlement; and (III) Granting Related Relief* (D.I. 1741), indicating that the estate's funds had been distributed.

12. On September 9, 2014, the Bankruptcy Court closed the Debtors' bankruptcy cases.

13. After the District Court and the United States Court of Appeals for the Third Circuit affirmed the Approval Order, the United States Supreme Court vacated the Third Circuit's affirmance of the Approval Order. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 987 (2017) ("The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.").

**C. Reopening and Conversion to Chapter 7 Cases**

14. On May 17, 2017, the Bankruptcy Court reopened Holding's bankruptcy case and converted it to Chapter 7. On October 12, 2018, the Court reopened the remaining Debtors' bankruptcy cases and converted them to Chapter 7.

15. As a result of the conversion of the Debtors' bankruptcy cases to proceedings under chapter 7 or title 11 of the United States Code, the Committee was dissolved.

**D. The Trustee's Motion to Substitute as Plaintiff in the Committee Adversary Proceeding**

16. On April 12, 2018, the Trustee filed the *Motion to Substitute Chapter 7 Trustee as Real Party in Interest* (Adv. D.I. 121), pursuant to which the Trustee seeks to be

substituted for the Committee as the "real party in interest" in the Committee Adversary Proceeding.[2]

**E. The Trustee's Settlement Motion**

17. On January 23, 2020, the Trustee filed the Trustee's Settlement Motion.

18. As set forth in the Trustee's Settlement Motion, on or about October 14, 2013, pursuant to the now vacated Approval Order, GEC received $9,792.52 from the Debtors' estates. *See* Trustee's Settlement Motion, ¶ 16.

19. By the Trustee's Settlement Motion, the Trustee seeks the Bankruptcy Court's approval of the Trustee's proposed settlement with GEC, pursuant to which (among other things) "GEC shall pay, or cause to be paid, to the Trustee the amount of $5,000 U.S. Dollars" (the "Settlement Payment"), payable to "George L. Miller, Chapter 7 Trustee of the Estates of Jevic Holding Corp., *et al.*," in exchange for a release. *See* Trustee's Settlement Motion, Exh. A, p. 4.

**OBJECTION**

20. The United States Supreme Court long ago recognized that parties should be restored to the *status quo ante* upon vacatur of a court order or judgment. *See Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 145 (1919) ("a party against whom an erroneous judgement or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby"); *Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219 (1891) ("[T]he power is inherent in every court, while the subject of controversy is in its custody, and the parties are before it, to undo what it had no authority to do originally, and which it, therefore, acted erroneously, and to restore, so far as possible, the parties to their former

[2] CIT intends to object to the *Motion to Substitute Chapter 7 Trustee as Real Party in Interest* and is awaiting a response from Trustee's counsel on the proposed briefing schedule.

position."); *see generally Dahm v. First American Title Insurance Co.*, 2008 WL 2704761, at *2 (N.D. Ill. 2008) (holding that "[a]fter a judgment is vacated, it is entirely destroyed and the parties are restored to" the *status quo ante*).

21. Courts require that parties be restored to their economic positions existing immediately before approval of a subsequently vacated settlement. *See, e.g., Leslie v. Conseco Life Ins. Co.*, 2014 WL 12479931, *2 (S.D. Fla. July 25, 2014) ("If this Court's approval of the Settlement Agreement is reversed, vacated, or modified in any material respect by any court, the Settlement Agreement will be void, [and] Plaintiffs and Conseco will be restored to their respective positions as of the date the Settlement Agreement was signed.").

22. As a result of vacatur of the Approval Order, CIT should receive the Settlement Payment, which constitutes a return of funds on which CIT had first-priority liens and security interests[3] immediately prior to entry of the Approval Order. The Trustee has no interest in such funds.

23. Moreover, CIT's first-priority liens and security interests are restored on ***all*** funds paid out pursuant to the Prior Settlement Agreement that come back into the Debtors' estates to the same extent such first-priority liens and security interests existed prior to entry of the Approval Order.

24. Accordingly, CIT objects to the Trustee's Settlement Motion to the extent that CIT does not receive the Settlement Payment or to the extent such funds are not held in the Debtors' estates subject to CIT's first-priority lien and security interests.

---

[3] Sun Capital agreed to provide a $2 million limited guaranty of the Prepetition Facility (the "Guaranty"). Under the Guaranty, Sun Capital is subrogated to the Prepetition Lenders' first priority secured lien in the Debtors' assets after the payment in full of the Prepetition Lenders' claims (including, without limitation, payment of fees and expenses and indemnification and other claims).

## RESERVATION OF RIGHTS

25. CIT reserves and preserves all of its rights, claims, causes of action and defenses with respect to any recovery of funds by the Trustee in connection with the Trustee's Settlement Motion or other actions and settlements in which the Trustee is involved related to distributions pursuant to the Approval Order. CIT also reserves and preserves all of its rights, claims, causes of action and defenses in connection with the Committee Adversary Proceeding or that it may assert against the Trustee.

## CONCLUSION

WHEREFORE, CIT respectfully requests that this Court enter an Order (i) approving the Settlement Agreement; (ii) ordering direct payment of the Settlement Payment to CIT or, alternatively, requiring the Trustee to hold the Settlement Payment subject to CIT's (and Sun's) liens and security interests according to their respective priorities; and (iii) granting such further relief to CIT as is appropriate.

Dated: February 7, 2020
Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Kurt F. Gwynne*

Kurt F. Gwynne (No. 3951)
Katelin A. Morales (No. 6683)
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail:kgwynne@reedsmith.com
E-mail: kmorales@reedsmith.com

*Counsel for The CIT Group/Business Credit, Inc., as agent for itself and the Lender Group*