## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JEVIC HOLDING CORP., *et al.*,[1]<br><br>    Debtors. | Chapter 7<br><br>Case No. 08-11006 (BLS) |
| OFFICIAL COMMITTEE OF<br>UNSECURED CREDITORS, on behalf of<br>the bankruptcy estates of JEVIC HOLDING<br>CORP., *et al*.<br><br>    Plaintiff,<br><br>    v.<br><br>THE CIT GROUP/BUSINESS CREDIT,<br>INC., in its capacity as Agent, *et al.*<br><br>    Defendants. | Adv. Pro. No. 08-51903<br><br><br>**Hearing Date:  4/20/2022 at 10:00 a.m. ET**<br>**Objection Due:  4/11/2022 at 4:00 p.m. ET** |

**MOTION OF GEORGE L. MILLER, AS CHAPTER 7
TRUSTEE, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 AND
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR ENTRY OF
AN ORDER APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASES**

George L. Miller, the chapter 7 trustee (the "Trustee") of the bankruptcy estates of Jevic

Holding Corp. and its affiliated debtors (the "Debtors"), hereby moves this Court (the "Motion"),

pursuant to Sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for entry of an order approving a global settlement of the adversary proceedings captioned

*Official Committee of Unsecured Creditors v. The CIT Group/Business Credit, Inc., et al.*, Adv.

---

[1]    The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Jevic Holding Corp. (8738), Creek Road Properties, LLC (9874) and Jevic Transportation, Inc (3402).

No. 08-51903 (BLS) (Bankr. D. Del.) (the "Committee Proceeding") and *The CIT Group/Business Credit, Inc. v. Jevic Holding Corp., et al.*, Adv. No. 19-50256 (BLS) (Bankr. D. Del.) (the "Restitution Proceeding," and together with the Committee Proceeding, the "Adversary Proceedings") and mutual releases in accordance with the terms of the Settlement Agreement attached hereto as **Exhibit 1** (the "Settlement Agreement").[2]  In support of this Motion, the Trustee respectfully states as follows.

**JURISDICTION AND VENUE**

1.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.

2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Trustee, solely in his capacity as chapter 7 trustee, and not in his personal capacity, consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein is sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 9019.

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

**BACKGROUND**

**I.      GENERAL BACKGROUND**

5.      On May 20, 2008 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of title 11 of the Bankruptcy  Code in the United States

Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "Court"), which

cases are jointly administered under Case No. 08-11006 (BLS) (the "Cases").

6.      On June 4, 2008, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the

"Committee") pursuant to section 1102 of the Bankruptcy Code.

7.      On May 22, 2018, the Court converted the Debtors' bankruptcy cases from

chapter 11 to chapter 7 proceedings.

8.      Thereafter, George L. Miller, was appointed as the chapter 7 Trustee of the

Debtors' bankruptcy estates.

**II.     THE PREPETITION TRANSACTIONS**

9.      Pursuant to that certain Stock Purchase Agreement among Jevic Transportation,

Inc. ("Jevic") and Jevic Holding Corp. ("JHC") (together, as buyer), Saia Motor Freight Line,

Inc. ("Seller"), and SCS Transportation, Inc. (as Seller's parent), dated as of June 30, 2006 (the

"Stock Purchase Agreement"), Sun Transportation, LLC, which is owned by Sun Capital

Partners, IV, purchased the Debtors from Seller for $77.4 million (the "Acquisition"), consisting

of $41.3 million in cash and $36.1 million of assumed liabilities.

10.    To finance the Acquisition, Sun[3] obtained a $90 million loan (the "Acquisition Facility") from Bank of Montreal to cover the purchase price and transaction costs. The Acquisition Facility was evidenced by a demand note, secured by all of the Debtors' assets, and guaranteed by Sun.

11.    Jevic, as borrower; JHC and Creek Road, as guarantors; The CIT Group/Business Credit, Inc. ("CIT"), as agent and lender; LaSalle Bank Midwest National Association, as syndication agent and lender; Wachovia Bank, National Association, as documentation agent and lender; and PNC Bank, N.A. and BMO Capital Markets Financing, Inc., as additional lenders,[4] entered into that certain Financing Agreement dated as of July 28, 2006 (the "Financing Agreement"), to refinance the Acquisition Facility (the "Refinancing Facility") with an $85 million revolving line of credit (the "Revolver") and a $16.2 million term loan (the "Term Loan").

12.    Jevic subsequently entered into a sale-leaseback transaction concerning certain real property (the "Sale Leaseback").

13.    In late 2007, the Debtors defaulted on the Financing Agreement, and on January 8, 2008, the Debtors entered into a Forbearance Agreement and Third Amendment to Financing Agreement (the "Forbearance Agreement").

---

[3]    Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, and Sun Capital Partners, Inc. are referred to, collectively, herein as "Sun".

[4]    Wells Fargo Capital Finance, BMO Harris Bank N.A., Bank of America, N.A., and PNC Bank, National Association, collectively, in their capacities as lenders, and together with CIT in its capacity as lender, under those certain loan facilities described in the Complaint filed in the Committee Proceeding are referred to herein as the "Lender Group".

14.     In connection with the Forbearance Agreement, Sun agreed to provide a $2 million limited guaranty of Jevic's indebtedness under the Financing Agreement (the "Guaranty"), which it paid.

15.     Pursuant to the terms of the Guaranty, after payment in full of CIT and the other lenders under the Financing Agreement, Sun subrogated to the first priority secured lien held by CIT and the other lenders in the Debtors' assets.

### III.    THE SUPREME COURT REVERSES THE PRIOR SETTLEMENT AGREEMENT AMONG THE DEBTORS, THE COMMITTEE, CIT, AND SUN AND THE CASES ARE CONVERTED TO CHAPTER 7

16.     Pursuant to the *Final Order (i) Authorizing Debtors-in-Possession to Obtain Senior Debtor in Possession Financing; (ii) Granting Liens, Security Interest, and Super Priority Status; (iii) Authorizing Use of Cash Collateral; and (iv) Affording Adequate Protection to Prepetition Lenders* (the "Final DIP Financing Order") [D.I. 118] entered in the Cases on June 20, 2008, the Committee was granted standing as set forth in the Final DIP Financing Order.

17.     On December 31, 2008, pursuant to the Final DIP Financing Order, the Committee commenced Committee Proceeding against CIT asserting various claims and an objection to the allowance of CIT's claims in the Cases.

18.     Following entry of the Final DIP Financing Order, the Court entered fourteen orders [D.I. 477, 582, 654, 715, 862, 1017, 1103, 1166, 1223, 1312, 1405, 1586, 1587, 1675] (collectively, the "Cash Collateral Orders") authorizing the Debtors to use cash collateral subject to CIT and, by subrogation, Sun's first-priority lien pursuant to the Financing Agreement and the Guaranty.

19.     By *Stipulation* dated February 20, 2009, which was "So Ordered" by the Bankruptcy Court on February 27, 2009 [D.I. 434], the Committee was granted standing to assert all other estate claims arising out of the facts and circumstances alleged in the complaint filed in

5

the Committee Proceeding (as amended, the "Complaint"), including all estate claims against Sun.

20.     On January 30, 2009, CIT filed its Motion to Dismiss the Complaint (the "Motion to Dismiss") [Adv. No. 08-51903, D.I. 5].

21.     On June 30, 2010, the Committee amended the Complaint to join Sun as defendants and to assert additional claims against Sun [Adv. No. 08-51903, D.I. 17].

22.     On September 15, 2011, the Bankruptcy Court granted in part and denied in part the Motion to Dismiss. *See Official Comm. Of Unsecured Creditors v. CIT Grp./Bus. Credit Inc.* (*In re Jevic Holding Corp.*), 2011 WL 4345204, *1 (Bankr. D. Del. Sept. 15, 2011) (the "2011 Opinion"), and accompanying Order (the "Dismissal Order") [Adv. No. 08-51903, D.I. 40, 41].

23.     In the 2011 Opinion and Dismissal Order, the Bankruptcy Court (i) denied the Motion to Dismiss with respect to the constructive fraudulent transfer and preference claims under sections 547, 548, and 550 of the Bankruptcy Code and (ii) granted the Motion to Dismiss with respect to the Committee's remaining claims. *Id.* At *14.

24.     On October 7, 2011, following entry of the Dismissal Order, the Committee filed its second amended Complaint [Adv. No. 08-51903, D.I. 43] (the "Amended Complaint").

25.     On November 4, 2011, each of Sun and CIT filed an Answer to the Amended Complaint [Adv. No. 08-51903, D.I. 44, 45].

26.     The Debtors, the Committee, Sun, and CIT entered into a Settlement Agreement and Release dated as of June 22, 2012 (the "Prior Settlement Agreement"), pursuant to which the Lender Group and Sun provided consideration and releases to the Debtors' estates in exchange for general releases as provided in the Prior Settlement Agreement.

27.     Upon a joint motion of the Debtors and the Committee and an evidentiary hearing, the Bankruptcy Court entered an order approving the Prior Settlement Agreement [Adv. No. 08-51903, D.I. 78] (the "Prior Approval Order"), which plaintiffs in *Casimir Czyzewski, et al. v. Jevic, et al.*, Adv. No. 08-50662 (the "WARN Plaintiffs") appealed (the "Prior Appeal").

28.     The Prior Approval Order provided that "CIT shall pay to the Debtors $2,000,000 (the 'Administrative Claim Fund')."  *See* Prior Approval Order, ¶ 4(a).

29.     The Prior Approval Order further provided for the payment of funds in the Administrative Claim Fund to estate professionals and other holders of administrative claims. *See* Prior Approval Order, ¶¶ 8-10.

30.     By the Prior Approval Order, Sun assigned its lien on the Debtors' remaining cash to a trust (approximately $1.7 million at the time of the settlement), which would first pay all of the priority unsecured creditors (including tax creditors) except those held by WARN Plaintiffs and then pay general unsecured creditors on a *pro rata* basis.

31.     On October 11, 2013, pursuant to the Prior Approval Order, the Debtors and the Committee filed the *Certification of Counsel Regarding Satisfaction of Conditions In Order Approving Joint Motion of the Debtors, CIT, Sun Capital and the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Section 105(a), 349 and 1112(b) and Fed. R. Bankr. P. 9019 for Entry of an Order: (I) Approving Settlement Agreement and Releasing Claims; (II) Dismissing the Debtors' Cases upon Implementation of Settlement; and (III) Granting Related Relief* [D.I. 1741].

32.     On January 24, 2014, the United States District Court for the District of Delaware (the "District Court") dismissed the Prior Appeal and affirmed the Prior Approval Order.  *See*

*Czyzewski v. Jevic Holding Corp. (In re Jevic Holding Corp.)*, 2014 WL 268613 (D. Del. Jan. 24, 2014).

33.    On February 21, 2014, the Plaintiffs appealed the District Court's dismissal of the Prior Appeal to the United States Court of Appeals for the Third Circuit (the "Third Circuit"), and, on May 21, 2015, the Third Circuit affirmed the decision of the District Court. *See Official Comm. Of Unsecured Creditors v. CIT Grp. Bus. Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173 (3d Cir. 2015).

34.    In 2016, the Supreme Court of the United States granted *certiorari* to hear the Prior Appeal. *See Czyzewski v. Jevic Holding Corp.*, 136 S. Ct. 2541 (2016).

35.    On March 22, 2017, the Supreme Court issued a majority opinion and order reversing the decision of the Third Circuit and remanding the case to the Third Circuit for further proceedings. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 987 (2017) ("The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.").

36.    On May 9, 2017, the Third Circuit vacated its 2015 opinion and remanded the case to the District Court. *See Official Comm. Of Unsecured Creditors v. CIT Group/Bus. Credit Inc. (In re Jevic Holding Corp.)*, 688 Fed. Appx. 166 (3d Cir. 2017).

37.    On May 12, 2017, the District Court issued an order vacating the Prior Approval Order and remanding the case to the Bankruptcy Court for further proceedings [D.I. 1759].

## IV.    POST-CONVERSION LITIGATION AMONG THE TRUSTEE, CIT, AND SUN

38.    On May 23, 2018, the Bankruptcy Court entered an order converting JHC's bankruptcy case, as of June 5, 2018, to a case under chapter 7 of the Bankruptcy Code [D.I. 1805].

39.     On June 5, 2018, the U.S. Trustee appointed the Trustee as the chapter 7 trustee with respect to JHC's estate [D.I. 1807].

40.     On October 12, 2018, the Bankruptcy Court reopened the remaining Cases and converted them to chapter 7 cases and the Trustee was appointed as chapter 7 trustee with respect to the estates of the remaining Debtors [D.I. 1856].

41.     Upon the conversion of the Debtors' chapter 11 Cases to chapter 7 Cases, the Committee was dissolved automatically.

42.     On April 12, 2019, the Trustee filed his *Motion to Substitute Chapter 7 Trustee as Real Party in Interest* [Adv. No. 08-51903, D.I. 121] (the "Motion to Substitute") and his opening brief in support thereof [Adv. No. 08-51903, D.I. 122]; by which the Trustee sought to substitute himself for the Committee as "plaintiff" in the Committee Proceeding.

43.     On June 3, 2019, CIT filed a complaint against the Trustee and various parties that allegedly received payments from the Administrative Claim Fund, thereby commencing Adversary Proceeding No. 19-50256 (BLS).

44.     On April 6, 2020, CIT and Sun each filed a response objecting to the relief requested by the Trustee in the Motion to Substitute and separate motions for judgment on the pleadings under Rule 12(c) (the "12(c) Motions") and briefs in support thereof.  [Adv. No. 08-51903, D.I. 125, 127, 130, 131, and 132].

45.     On May 5, 2021, the Bankruptcy Court issued an Opinion in which it (i) denied the Motion to Substitute and (ii) granted, in part, and denied as moot, in part, the 12(c) Motions [Adv. No. 08-51903, D.I. 151] (the "2021 Opinion").

46.     On May 19, 2021, the Bankruptcy Court entered its *Order (I) Denying the Chapter 7 Trustee's Motion to Substitute as Real Party [in] Interest and (II) Granting, in Part,*

*and Denying, in Part, as Moot the Motions of The CIT Group/Business Credit, Inc., as Agent, and Sun Capital for Judgment on the Pleadings* [Adv. No. 08-51903, D.I. 153] (the "2021 Order"), thereby dismissing with prejudice all claims asserted against CIT and Sun in the Amended Complaint.

47.   On June 2, 2021, the Trustee filed a *Notice of Appeal* [Adv. No. 08-51903, D.I. 156] of the 2021 Opinion and the 2021 Order, thereby commencing appeal No. 21-cv-00811-RGA in the District Court (the "Appeal").

## V.   THE SETTLEMENT AGREEMENT

48.   The Trustee, CIT, and Sun continued negotiations during the pendency of the Appeal.

49.   After the Appeal had been fully briefed, and to avoid the expense and uncertainty inherent in further litigating their respective claims, and without conceding any of the allegations or defenses asserted by either side, the Trustee, on the one hand, and CIT, the Lender Group, and Sun, on the other hand, (collectively referred to herein as the "Parties" and each a "Party") entered into the Settlement Agreement attached hereto as **Exhibit 1**.

50.   Under the Settlement Agreement, which was the result of extensive, active, good-faith discussions and arms' length negotiations among the Parties, the Parties agree to mutually release one another from all claims other than claims arising with respect to the performance of the Settlement Agreement as more fully set forth in the Settlement Agreement. *See* Settlement Agreement ¶ 6.

51.   The Parties further agreed, among other thins and as more fully set forth in the Settlement Agreement, that:

10

a.  CIT, as agent, shall pay (or cause to be paid) the sum of Two Hundred Eight Thousand Seven Hundred Fifty Dollars ($208,750) (the "Lender Payment") to the Trustee for the benefit of the bankruptcy estate of JHC;

b.  Sun shall pay the sum of Two Hundred Twenty Two Thousand Two Hundred Fifty Dollars ($222,250) (the "Sun Payment") to the Trustee for the benefit of the bankruptcy estate of JHC (together, the Lender Payment and the Sun Payment are referred to as the "Settlement Payment");

c.  The Settlement Payment shall be made via wire to an account controlled by the Trustee in the name of "Jevic Holding Corp.";

d.  Notwithstanding any other provision of the Settlement Agreement, (a) no member of the Lender Group (including CIT, as lender or agent) shall be liable (jointly or otherwise) for the Sun Payment and (b) Sun shall not be liable (jointly or otherwise) for the Lender Payment;

e.  within ten (10) days after the latter of the Trustee's receipt of the Settlement Payment or the Order approving this Motion becoming final and non-appealable, the Trustee shall cause a stipulation of dismissal with prejudice, the form of which is attached as Exhibit B to the Settlement Agreement, to be executed and filed with the District Court pursuant to Bankruptcy Rule 8023, and take such other action (if any) as is necessary to dismiss the Appeal with prejudice and close the Committee Proceeding (the "Appeal Stipulation");

f.  within three (3) business days after the filing of the Appeal Stipulation, counsel for CIT shall cause the stipulation of dismissal with prejudice of

the Restitution Proceeding, the form of which is attached as Exhibit C to the Settlement Agreement, to be executed and filed with the Bankruptcy Court (the "Restitution Proceeding Stipulation");[5]

g.  the interest of CIT, as agent, in funds recovered (or to be recovered) on account of the Administrative Claim Fund is superior to any claim or interest in such funds asserted by the Trustee;

h.  CIT is entitled to, and shall receive, the $27,300 escrowed by counsel for settling with defendant Goodyear Tire & Rubber Co. ("Goodyear") in the Restitution Proceeding; and

i.  Except with respect to each party's performance under the Settlement Agreement, the parties will mutually release one another and their respective affiliated entities and individuals from, among other things, all claims or counterclaims, causes of action, remedies, damages, liabilities, debts, suits, demands, actions, costs, expenses, fees or controversies related to the Debtors or their estates.

**RELIEF REQUESTED**

52.     Pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Trustee seeks entry of an order substantially in the form attached hereto as **Exhibit 2** (the "Proposed Order"): (i) approving the Settlement Agreement including, without limitation,

---

[5]   Notwithstanding the above, if any *non*-Party defendant in the Restitution Proceeding refused to execute the Restitution Proceeding Stipulation, (a) CIT shall not be required to file the Restitution Proceeding Stipulation, (b) counsel for CIT shall prepare a stipulation and order of dismissal with prejudice of the Restitution Proceeding (in substantially the form attached as Exhibit C to the Settlement Agreement) with respect to the Parties and the non-Party defendants that agree to the execution and filing of Restitution Proceeding Stipulation, and (c) CIT, as agent, may seek the dismissal of its claims in the Restitution Proceeding against any non-executing non-Party(ies) or continue to prosecute its claims against any such non-Party(ies) in the Restitution Proceeding.

the mutual releases therein; and (ii) granting such other and further relief as may be just and proper.

## BASIS FOR RELIEF

53.     As noted above, the Settlement Agreement represents the culmination of lengthy, good faith, and arms' length negotiations between the Parties.  The settlement will address the primary remaining claims and causes of action in these chapter 7 proceedings that have been pending for nearly fourteen years.

54.     Approval of the Settlement Agreement constitutes a reasonable exercise of the Trustee's business judgment under Bankruptcy Code section 363(b).  This provision states that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate …."  11 U.S.C. § 363(b)(1).  In interpreting this provision, courts have held that a transaction involving property of the estate generally should be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business."  *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *see also Sheehan v. Dobin*, 2011 WL 1627051, at *3 (D.N.J. Apr. 28, 2011) ("[G]reat judicial deference is given to the Trustee's exercise of business judgment.") (citation omitted).  Approval of the Settlement Agreement should be further authorized under section 105(a) of the Bankruptcy Code, which allows the Court "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

55.     Bankruptcy Rule 9019(a) provides a further basis for the relief requested in this Motion, and states: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

56.    The Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." *Myers v. Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (citing Collier on Bankruptcy 9019.03) (15th ed. 1993); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Courts in this district also have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See, e.g.*, *In re Managed Storage Int'l, Inc.*, 2020 WL 1532390, at *4 (D. Del. Mar. 31, 2020).

57.    In approving a settlement, the Court "need not conduct an exhaustive investigation" "into the validity of the merits of the claims sought to be compromised." *United States v. Ala. Nat'l Bank* (*In re Walsh Constr., Inc.*), 669 F.2d 1325, 1328 (9th Cir. 1982); *see also In re Managed Storage Int'l, Inc.*, 2020 WL 1532390, at *4 ("[T]he Court need not conduct a mini-trial or a full evidentiary hearing."). Rather, the Court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and equitable. *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable.").

58.    The court need not be convinced that the settlement is the best possible compromise in order to approve it. *In re Managed Storage Int'l, Inc.*, 2020 WL 1532390, at *4. Instead, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." *Travelers Cas. & Sur. Co. v. Future Claimants Representative*, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing *Matter of Jasmine, Ltd.*, 285 B.R. 119 (D.N.J. 2000)): *see also In re Managed Storage Int'l, Inc.*, 2020 WL 1532390, at

14

*4 ("[T]he court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness.").

59.     In determining whether a settlement is fair and reasonable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.  The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors."  *Myers*, 91 F.3d at 393; *see also Key3Media Grp., Inc.*, 336 B.R. at 93 ("[W]hen determining whether a compromise is in the best interests of the estate, the Court must 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'") (quoting *Myers*, 91 F.3d at 393).

60.     The Trustee respectfully submits that the compromise embodied in the Settlement Agreement is a reasonable exercise of the Trustee's business judgment and satisfies the requirements of Bankruptcy Rule 9019.  First, although the Trustee is confident in his claims, the Appeal includes issues of first impression in this District regarding whether the Trustee can be substituted for the Committee in the Committee Proceeding and, if that issue is decided against the Trustee, there will be no party remaining to prosecute the Committee Proceeding.  Moreover, all litigation is uncertain and unpredictable, and even more so where, as here, even if the Trustee is successful in the Appeal, (i) the Trustee must still conduct discovery and litigate claims that are based on events that occurred over fifteen years ago, and (ii) the 2021 Opinion and Order did not yet resolve issues regarding whether the section 546I safe harbor applies to any or all of the Trustee's claims.  The issues are therefore exceedingly complex and sprawling, and would entail

a significant amount of time and resources to prosecute.  The paramount interest of creditors is also served by the Settlement Agreement because it will resolve claims that have been pending since 2008 and bring over $400,000 into the estates.

61.     Therefore, taking into consideration the time, cost, expense and complexity of the Adversary Proceedings, the Trustee has determined that the entry into the Settlement Agreement will help avoid costs and delay, and bring finality and certainty to the Cases.

62.     The Trustee submits that entry into the Settlement Agreement is a sound exercise of the Trustee's business judgment and the Settlement Agreement is fair, reasonable and appropriate, and approval by the Court is warranted.

63.     For the foregoing reasons, the Trustee respectfully requests entry of the Proposed Order approving the Settlement Agreement, which in the Trustee's business judgment is in the best interests of the Debtors, their estates, its creditors, and other parties in interest.

**NOTICE**

64.     Notice of this Motion has been given to (a) the U.S. Trustee, (b) counsel to CIT, (c) counsel to Sun, (d) the parties to the Restitution Proceeding; and I all parties who, as of the filing of this Motion, have requested notice pursuant to Bankruptcy Rule 2002.  The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth above, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit 2**, (i) approving the Settlement Agreement, and (ii) granting such other and further relief as may be just and proper.

Dated:  March 25, 2022
     Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN**
**& ARONOFF LLP**

*/s/ Kevin M. Capuzzi*
Michael J. Barrie (No. 4684)
Jennifer R. Hoover (No. 5111)
Kevin M. Capuzzi (No. 5462)
Matthew D. Beebe (No. 5980)
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
jhoover@beneschlaw.com
kcapuzzi@beneschlaw.com
mbeebe@beneschlaw.com

*Special Litigation Counsel for George L.*
*Miller, Chapter 7 Trustee*